[No. 2076]

GERTRUDE ELEANOR TIEDEMANN, APPELLANT, *v.*
RUDOLPH ERNEST TIEDEMANN, RESPONDENT.

1. DIVORCE—JURISDICTION—RESIDENCE.
   Under the provisions of section 22 of the marriage and divorce act (Rev. Laws, 5838) a six months' residence is essential only when the plaintiff relies alone on his or her residence. The act defining what shall constitute legal residence (Rev. Laws, 3609) only affects the character of residence where a residence is essential to jurisdiction.

2. DIVORCE—JURISDICTION—RESIDENCE—COLLUSION.
   Where neither of the parties have a residence or domicile within the state and one of the parties takes up a temporary abode for the purpose of procuring a divorce, and thereafter the other party, in collusion with the plaintiff, enters the state for the purpose of permitting service in the action, jurisdiction may not thus be conferred.

3. DIVORCE—JURISDICTION—RESIDENCE.
   While it may be essential that one of the parties to the action for divorce must be a resident of the state, it does not follow that residence for any particular length of time is in every case essential. By statute a nonresident plaintiff may have a right of action against a resident defendant.

4. DIVORCE—JURISDICTION—RESIDENCE—LEGISLATIVE POWER.
   There is no legal inhibition to the legislature giving to a resident plaintiff a right of action for divorce and in establishing jurisdiction over the subject-matter in the county where the defendant may be found.

Opinion of the Court—Norcross, J.

5. DIVORCE—DOMICILE OF WIFE—RESIDENCE.
    A wife, having a cause of action for divorce, has a right to change her domicile from that of her husband, and, where the complaint states a cause of action, it will be assumed that the domicile of the wife is identical with that of her residence.
6. DIVORCE—STATUTORY CONSTRUCTION—"FOUND" DEFINED.
    The word "found," as used in section 22 of the divorce act, *supra*, is used in the same sense that it is used in other provisions of the civil practice act relative to the service of process, and means the county in which service of summons may be had personally upon the defendant.
7. STATUTES—COURTS—LEGISLATIVE AND JUDICIAL FUNCTIONS.
    A valid statute must be construed by the courts according to its meaning ascertained in accordance with established rules of construction, and, as so construed, enforced.
8. DIVORCE—JURISDICTION—RESIDENCE—PLEADING.
    Under section 22 of the marriage and divorce act (Rev. Laws, 5838) providing that "Divorce from the bonds of matrimony may be obtained by complaint, under oath, to the district court of the county * * * in which defendant shall reside or be found," etc., a complaint alleging that the plaintiff is a resident of a certain county within this state and that the defendant "is now within and can be found in said county" alleges facts sufficient to invest the court with jurisdiction. (*Fleming* v. *Fleming*, 36 Nev. 135, distinguished.)

McCARRAN, J., dissenting.

APPEAL from the First Judicial District Court, Ormsby County; *Frank P. Langan,* Judge.

Action by Gertrude Eleanor Tiedemann against Rudolph Ernest Tiedemann for a divorce. From a judgment of dismissal for want of jurisdiction based on the allegations in the complaint, plaintiff appeals.   **Reversed.**

The facts sufficiently appear in the opinion.

*Alfred Chartz,* for Appellant.

*Samuel Platt,* for Respondent.

By the Court, NORCROSS, J. :

This is an appeal from a judgment of dismissal of plaintiff's action for a divorce, based upon an order sustaining a demurrer to plaintiff's complaint.

The complaint in the action was filed in the First judicial district court in and for Ormsby County, on August 16, 1912.   On the same day summons was issued

and served on the defendant within the said county of Ormsby. Thereupon, the defendant appeared specially by his counsel for the purpose of moving to set aside the service of summons. An order was subsequently made setting aside the service. From this order an appeal was taken to this court and the order reversed. (*Tiedemann v. Tiedemann*, 35 Nev. 259.) Defendant, through his counsel, then filed a demurrer to the complaint upon two grounds:

"I. That said complaint does not state facts sufficient to constitute a case of action.

"II. That the court has no jurisdiction of the person of the defendant nor of the subject-matter of the action for the reasons:

"(a) The complaint does not show on its face that the plaintiff was at the time of the filing of the complaint a resident within the county of Ormsby, State of Nevada, six months immediately last past preceding the filing of said complaint.

"(b) The complaint does not show upon its face that the defendant was a resident within the county of Ormsby, State of Nevada, for six months immediately last past preceding the filing of said complaint.

"(c) The complaint does not show upon its face that the plaintiff was a resident within the county of Ormsby, State of Nevada, for the continuous period of six months last past preceding the filing of said complaint.

"(d) The complaint does not show upon its face that the defendant was a resident within the county of Ormsby, State of Nevada, for six months continuously last past immediately preceding the filing of said complaint."

The first and second paragraphs of plaintiff's complaint contain the only allegations relative to residence of either plaintiff or defendant. These allegations are as follows:

"I. That plaintiff is a resident of Carson City, Ormsby County, State of Nevada.

"II. That plaintiff is informed and believes, and upon such information and belief alleges the fact to be, that said defendant is now within, and can be found in said

county of Ormsby, and within the jurisdiction of this court."

Section 22 of "An act relating to marriage and divorce," approved November 28, 1861, provides: "Divorce from the bonds of matrimony may be obtained, by complaint under oath, to the district court of the county in which the cause therefor shall have accrued, or in which the defendant shall reside or be found, or in which the plaintiff shall reside, if the latter be either the county in which the parties last cohabited, or in which the plaintiff shall have resided six months before suit be brought, for the following causes:   *   *   *." (Rev. Laws, 5838.)

Section 1 of "An act defining what shall constitute legal residence in the State of Nevada," approved March 22, 1911, provides:

"The legal residence of a person with reference to his or her right of suffrage, eligibility to office, right of naturalization, right to maintain or defend any suit at law or in equity, or any other right dependent on residence, is that place where he or she shall have been actually, physically and corporeally present within the state or county, as the case may be, during all of the period for which residence is claimed by him or her   *   *   *   ." (Rev. Laws, 3609.)

In the recent case of *Fleming* v. *Fleming*, 36 Nev. 135, *ante*, we had occasion to consider the sufficiency of allegations in a complaint for divorce, where the plaintiff based his right of action solely upon his own residence. In that case we held "that the residence required by the statute (Rev. Laws, 5838), and contemplated by the session act of 1911, was actual residence; that is, physical, corporeal presence, and not alone legal residence or domicile," for the period of six months within the county wherein suit was instituted.

1. Counsel for respondent contends that the Fleming case is conclusive against appellant on this appeal. If, as in the Fleming case, appellant in this case was relying on her own residence within the state as a basis of jurisdiction over the subject-matter of the action, the complaint, unquestionably, would be insufficient. Appellant,

however, is not relying alone upon the allegations of her own residence as a basis for the court's jurisdiction, but, together with that, upon the allegation that the suit is brought within the county where the defendant can be "found."

It will be observed that by the provisions of section 22 of the marriage and divorce act, quoted *supra* (Rev. Laws, 5838), jurisdiction may be acquired in the court of a county when either of five different states of fact is shown to exist, to wit: (a) In which the cause therefor shall have accrued. (b) In which the defendant shall reside. (c) In which the defendant shall be found. (d) In which the plaintiff shall reside and the parties last cohabitated. (e) In which the plaintiff shall have resided six months before the suit was brought.

It is manifest that the territorial legislature of 1861 only intended to make a six months' residence essential when the plaintiff relied alone on his or her residence. The marriage and divorce act provided for seven distinct grounds for divorce. If both parties were in the territory or state, a cause of action might accrue, regardless of the time the parties may have been within the territory or state, under either the first, second, fourth, or sixth specification of grounds for divorce. In such an event the length of residence of either of the parties was immaterial so far as being essential to invest the court with jurisdiction. If the suit was brought in that county where the defendant resided or was found, the length of residence of the plaintiff was likewise immaterial. If the plaintiff instituted action within the county where the parties last cohabited, a six months' residence upon the part of plaintiff is, also, not required. The act of 1911, *supra*, only affects the character of residence, where residence is essential to jurisdiction.

In the Fleming case the plaintiff relied on his own residence for six months to establish jurisdiction in the court over the parties and the subject-matter of the action. In this case jurisdiction rests upon the allegation of residence upon the part of the plaintiff and that

defendant could be found in the county in which suit was instituted.    The defendant was served with summons within Ormsby County the same day the complaint was sworn to and filed.    Whether the court below was invested with jurisdiction by virtue of the allegations in the complaint depends upon the construction to be placed on the word "found," as used in the statute.

**2.** The circumstances which brought defendant from his home in Connecticut to Carson City are set forth in the statement of the case upon the former appeal from the order quashing the service of summons (35 Nev. 259). There is no contention that the defendant was within Ormsby County, at the time the suit was instituted and the summons served, by reason of any collusion between the parties for the purpose of such a service, and the case presents no question of collusion.    If neither of the parties had a residence or domicile within the state, and one of the parties took up a temporary abode therein for the purpose of procuring a divorce, and thereafter the other party, in collusion with the plaintiff, entered the state for the purpose of permitting service to be made upon him or her, as the case might be, doubtless such a state of facts would not confer jurisdiction.

**3.** None of the states, so far as we are advised, have a statute similar to the one under consideration and there are no decisions directly in point to aid in construing our statute.    While we may concede, for the purpose of this appeal, that one of the parties to the marriage sought to be dissolved must be a resident of the state, it does not follow that a residence for any particular length of time is in every case essential.    A statute may permit an action by a nonresident plaintiff against a resident defendant.    (*Watkins* v. *Watkins*, 135 Mass. 83; *Smith* v. *Smith*, 4 Mackey, D. C. 255.)

**4.** Although our divorce act, so far as the question here involved is concerned, has remained unchanged from the date of its enactment, more than half a century ago, it has never before become necessary for this court to construe its peculiar provisions.    The act was not

borrowed from any of the then existing Pacific coast states or territories. Whether its provisions were taken from the laws of some eastern state or territory or originated with the argonauts who composed the first territorial assembly, we are not at this time advised. Suffice it to say it was adopted as the law of the territory and by the provisions of the constitution became a part of the laws of the state. The legislature of 1913 adopted an amendment to section 22, *supra,* which takes effect January 1, 1914, adding the proviso "that when at the time the cause of divorce accrues, the parties shall not both be *bona fide* residents of the state, no court shall have jurisdiction to grant a divorce, unless either the plaintiff or the defendant shall have been a *bona fide* resident of the state for a period of not less than one year next preceding the commencement of the action." (Stats. 1913, p. 10.) As that amendment was not in force at the time the action was brought, it does not affect rights of action instituted prior to the time the amendment is in effect.

We can find no legal inhibition to the legislature giving to a plaintiff, who is a resident of the state, a right of action for divorce and establishing jurisdiction over the subject-matter of the action in the county where the defendant may be found. Whether the legislature would have such power in case both parties were nonresidents and there was no collusion, it is unnecessary to consider.

5. For the purpose of the demurrer it is admitted that the plaintiff is a resident of the state, and it will be assumed that her domicile is identical with her residence, as it is not contended that the complaint does not state a cause of action for divorce. (Bishop on Marriage and Divorce, vol. 2, sec. 124.)

6. When, then, may a defendant be said to be "found" within the meaning of the statute? It is clear from the statute that the word "found" is used in contradistinction to the word "reside." The action then may be instituted by a resident of the state in a court of a county, regardless of the residence of the defendant, if it is alleged that he can be found within the county where

suit is instituted and is actually served with process therein.

There is nothing in the language of the statute to indicate that the legislature in using the word "found" intended to use it in any sense other than it is frequently used in statutes relative to the service of process. The same legislative assembly which adopted the marriage and divorce act (session of 1861) adopted a civil practice act which provides that "summons shall be served by the sheriff of the county where the defendant is found." (Stats. 1861, p. 318.)   The word is used in other sections relative to service and has been so used in every civil practice act since adopted. It is used in the practice acts of most, if not all, the states, to mean the county in which the service of process may be had personally upon the defendant. As no other reasonable meaning to be applied to the word suggests itself, we feel constrained to apply the same meaning which the word imports when used in other provisions of law relative to the service of process.

**7.** As the legislature had the power to enact this law, we have no province other than to construe it according to its meaning and, so construed, to enforce it.

It is our conclusion that the complaint alleges sufficient requisite facts to invest the court with jurisdiction of the subject-matter and the parties, and that, hence, the ruling and judgment of the court were erroneous.

The judgment is reversed and the order sustaining the demurrer set aside, subject to the privilege of defendant to answer, within such time as the court below may order.

TALBOT, C. J., concurring:

I concur in the opinion and order as written by Justice NORCROSS.

It is not denied by any of the authorities that the power to regulate marriage and divorce is vested in the different states, and not in Congress, under the federal constitution. In the absence of some prohibitive organic or fundamental provision—and it is not claimed that

there is any in our state constitution—the legislature is empowered to pass such laws regulating these matters as it deems best.  Generally speaking, the marital status of the citizen, the age of consent, the manner in which marriage may be solemnized, the obligations it imposes affecting personal or property rights, the time, condition of residence and causes required for obtaining divorce, are all within the control of the state and subject to her laws as enacted by the legislature.  The question is not whether as individuals or as legislators we would desire to have other restrictions or a different enactment. Unless clearly void for some fundamental cause, it is the duty of the courts to construe the statute according to its language and the evident intention of the legislature.  (*Humboldt County* v. *Churchill County*, 6 Nev. 30; *Sawyer* v. *Dooley*, 21 Nev. 390; *State* v. *Irwin*, 5 Nev. 111; *State* v. *Parkinson*, 5 Nev. 15; *State* v. *Commissioners of Humboldt County*, 21 Nev. 235; *Kirman* v. *Powning*, 25 Nev. 378.)

The policy of the law is for the legislative department of the state government, and it is not for the courts to give the act a meaning different from any implied from the words which it contains.  (*State* v. *McClear*, 11 Nev. 39; *State* v. *Parkinson*, 5 Nev. 15; *Ex Parte Boyce*, 27 Nev. 299.)

The court cannot read into the statute something beyond the manifest intention of the legislature as gathered from its language.  The function of the court is to determine the intention of the legislature from the words used, in accordance with established rules of statutory construction.  (*Ex Parte Pittman*, 31 Nev. 43.)

In the Andrews case (188 U. S. 15, 47 L. Ed. 366) it was held that the appearance of a nonresident defendant does not invest the court with jurisdiction of a divorce suit instituted by a person who has no *bona fide* domicile within the state.

Our district court in Washoe County dismissed the Sothern case a few years ago because the plaintiff, while living in New York, and without coming here, brought suit in Nevada and had summons served upon the

defendant, who by chance or collusion was found here, when neither was a resident of this state.

The restriction as held by these and other decisions, that the court is without jurisdiction in an action for divorce when neither of the parties is a resident of the state, does not apply to any question presented by this appeal, because it is alleged, and for the purpose of the demurrer admitted, that the plaintiff is a resident, and consequently it is not necessary to determine whether these decisions are good law or should be followed, when it does not appear that there is any constitutional inhibition against allowing the legislature to confer jurisdiction upon the courts to try cases for divorce between nonresidents, nor is it necessary to consider whether these cases will bear analysis in view of the later opinions of the Supreme Court of the United States, holding that the federal courts have jurisdiction of cases in which both of the litigants are nonresidents if no motion is made to move the case away or objection made to the jurisdiction. If it be conceded that, regardless of statute, it is essential that at least one of the parties must be a resident of the state in order to give the court jurisdiction over the marital status or to grant a divorce, the decisions do not hold that this residence must be for any particular length of time unless required by legislative enactment.

As our statute, passed at the territorial session in 1861, provides that divorce from the bonds of matrimony may be obtained by complaint under oath to the district court of the county in which the defendant shall reside or be found, and this action was brought in the county in which it is alleged, and for the purpose of the demurrer and this appeal admitted, the plaintiff resided and in which the defendant was found at the time it was commenced and has been brought within the provisions of the statute, in order to hold that the action is not properly brought or cannot be maintained it would be necessary to set aside, or in effect judicially amend, this act. If it be argued or conceded that it is necessary that in addition to the provision of the statute that suit may be

commenced in the county where the defendant is found, it is required that one of the parties must be a resident of the state, that requirement is fulfilled by the record. The act does provide that suit may be brought in the county in which the plaintiff shall have resided for six months before the commencement of the action, but does not require any specified length of residence by the plaintiff if suit be brought in the county in which the cause of action accrued or in which the defendant shall reside or be found, or in which the plaintiff shall reside, if the latter be the county in which the parties last cohabited. No question regarding collusion or of the *bona fides* of the residence of the plaintiff being involved, and the time of residence being one of policy for the legislature, the courts are as much unauthorized to require six months' residence of the plaintiff in the county in the cases where the statute requires no specified length of residence, as they would be to exact one or more years' residence in the cases in which the statute in force to the end of this year designates six months.

In Bishop on Marriage and Divorce, 6th ed. vol. 2, secs. 343b, 113, and 113a, it is said: "The court, to render a valid decree of divorce, must, as shown in preceding discussions, have jurisdiction over the subject-matter, which is the marital status either of one of the parties or of both, and over the person of the party or parties whose status is to be dissolved. * * * For the state, including its government in every other department as well as its courts, is bound by the law of nations, and it has no just right to establish a domestic rule, pertaining to a thing of international law like the marital status, in conflict therewith. Still, if it does, the courts are compelled to obey the statute, in preference to the unwritten rule of nations. * * * As the legislature is under high obligations not to violate the law of nations, its commands on this question of international law may well be accepted by the courts as expressive of its opinion of what such law permits. When, therefore, a judicial tribunal finds a statute of its own state directing it to

take the jurisdiction and dissolve marriages in specified circumstances, it, accepting this as expressive of the legislative interpretation of what the law of nations allows, may properly regard itself at liberty, and perhaps required, to hold as valid a divorce pronounced in the same circumstances in another state or country. It was as competent for the legislature to command this as the other, and the implication is very distinct that it so intended. In a Wisconsin case it appeared that parties were married in Wisconsin, where they lived together, and there the husband committed a matrimonial offense. The wife, afterward, without him, went to reside in Minnesota, in which state she obtained a divorce for this offense from him; he not appearing, and having merely the notice by publication which the laws of Minnesota provided for nonresident defendants. Yet the Wisconsin courts accepted this divorce as adequate to change in Wisconsin her matrimonial status."

In *Jones* v. *Jones,* 108 N. Y. 415, 60 Tex. 451, in an action for divorce brought by the husband in New York, it appeared that the wife had obtained a decree of divorce from him in Texas, on the ground of cruel treatment, in a suit commenced in Texas, on service of the petition and citation on the husband in the city of New York while he was a resident there. Thereafter, the husband went to Texas, filed an answer to the petition, which, after alleging want of jurisdiction of the person and that he appeared solely for the purpose of a motion to quash the service of the citation, contained a general denial of the allegations of the petition. The court overruled the motion to quash the service, the case was continued until the next term to enable the husband to prepare for trial, was tried, and a decree was granted, which on appeal by the husband was affirmed. It was held by the New York Court of Appeals that the Texas decree was a valid and binding adjudication, that the husband became bound by it and the statute of that state, which made the filing of an answer by the defendant an appearance and submission to the jurisdiction.

In *Donegal* v. *Donegal,* 3 Phillim. 597, a resident of

Dublin appeared in a divorce suit brought in London and admitted an allegation of the bill that she was a resident of St. James, Westminster. There being no collusion, it was held that the court had jurisdiction of the person.

In *Cheever* v. *Wilson*, 76 U. S. 110, 19 L. Ed. 604, it was held that the constitution and laws of the United States give an Indiana decree of divorce the same effect elsewhere which it has in that state, that the finding of the residence of the plaintiff by the decree was sufficient, that the wife may acquire a separate domicile from her husband whenever it is necessary and proper that she should do so, that suit may be instituted where the wife resides, regardless of the place of marriage, of the offense, and the domicile of the husband. The following appears in the opinion of the Supreme Court of the United States in that case:

"It is said that the petitioner went to Indiana to procure the divorce, and that she never resided there. The only question is as to the reality of her new residence and of the change of domicile. (*Case* v. *Clark*, 5 Mason, 70; *Cooper's Lessee* v. *Calbraith*, 3 Wash. C. C. 550; *McDonald* v. *Smalley*, 1 Pet. 620.) That she did reside in the county where the petition was filed is expressly found by the decree. Whether this finding is conclusive, or only *prima facie* sufficient, is a point on which the authorities are not in harmony. (*Noyes* v. *Butler*, 6 Barb. Sup. Ct. 613; *Hall* v. *Williams*, 6 Pick. 239; *Mills* v. *Duryee*, 2 Amer. L. C. 791, note; 7 Cr. 481–487.) We do not deem it necessary to express any opinion upon the point. The finding is clearly sufficient until overcome by adverse testimony. None adequate to that result is found in the record. Giving to what there is the fullest effect, it only raises a suspicion that the *animus manendi* may have been wanting. It is insisted that Cheever never resided in Indiana; that the domicile of the husband is the wife's, and that she cannot have a different one from his. The converse of the latter proposition is so well settled that it would be idle to discuss it. The rule is that she may acquire a separate domicile whenever it is necessary or

proper that she should do so. The right springs from the necessity of its exercise, and endures as long as the necessity continues. (2 Bishop on Marriage and Divorce, 475.) The proceeding for a divorce may be instituted where the wife has her domicile. The place of the marriage, of the offense, and the domicile of the husband are of no consequence. (*Ditson* v. *Ditson*, 4 R. I. 87.)".

A number of other cases holding that the appearance of a nonresident defendant gives the court jurisdiction to enter a decree are cited in the note under this decision in 19 L. Ed. 605.

The personal service of summons on the defendant may be considered as equivalent to his appearance, so far as the giving of jurisdiction is concerned.

Section 5034 of the Revised Laws provides: "From the time of the service of the summons in a civil action, the court shall be deemed to have acquired jurisdiction, and to have control of all the subsequent proceedings. A voluntary appearance of a defendant shall be equivalent to personal service of the summons upon him."

In the Atherton case, 181 U. S. 155, 45 L. Ed. 795, it was held that constructive service, by mailing to another state notice of suit, will make a decree granting a divorce as binding on the defendant as though service had been made with notice in the state where the suit was pending, or there had been voluntary appearance in the action. Any modification of that case, or of the one of *Cheever* v. *Wilson* by the divided court of five to four in the Haddock case, 201 U. S. 565, does not affect their application to this case, for there is nothing in the opinion of any of the justices concurring or dissenting which might have that effect.

In the majority opinion in the Haddock case it is said: "That where a court of one state, conformably to the laws of such state, or the state, through its legislative department, has acted concerning the dissolution of the marriage tie, as to a citizen of that state, such action is binding in that state as to such citizen, and the validity of the judgment may not therein be questioned on the ground that the action of the state in dealing with its own

citizens concerning the marriage relation was repugnant to the due process clause of the constitution. (*Maynard* v. *Hill*, 125 U. S. 190, 31 L. Ed. 654, 8 Sup. Ct. 723.) In that case the facts were these: Maynard was married in Vermont, and the husband and wife removed to Ohio, from whence Maynard left his wife and family and went to California. Subsequently he acquired a domicile in the Territory of Washington. Being there so domiciled an act of the legislature of the territory was passed granting a divorce to the husband. Maynard continued to reside in Washington, and there remarried and died. The children of the former wife, claiming in right of their mother, sued in a court of the Territory of Washington to recover real estate situated in the territory, and one of the issues for decision was the validity of the legislative divorce granted to the father. The statute was assailed as invalid, on the ground that Mrs. Maynard had no notice and that she was not a resident of the territory when the act was passed. * * * The power of the territorial legislature, in the absence of restrictions in the organic act, to grant a divorce to a citizen of the territory was, however, upheld in view of the nature and extent of the authority which the government possessed over the marriage relation. It was therefore decided that the courts of the territory committed no error in giving effect within the territory to the divorce in question. And as a corollary of the recognized power of the government thus to deal with its own citizen by a decree which would be operative within its own borders, irrespective of any extraterritorial efficacy, it follows that the right of another sovereignty exists, under principles of comity, to give a decree so rendered such efficacy as to that government may seem to be justified by its conceptions of duty and public policy."

In the dissenting opinion of Justice Brown in the Haddock case, concurred in by Justices Harlan, Brewer, and Holmes, it is said: "There is no doubt of the proposition that a decree of divorce may be lawfully obtained at the matrimonial domicile, notwithstanding that the defendant may have taken up his or her residence

Talbot, C. J., concurring

separate from the other party in another state, providing that the law of domicile with respect to personal service or publication be scrupulously observed. (*Atherton* v. *Atherton,* 181 U. S. 155, 45 L. Ed. 794, 21 Sup. Ct., 544.)"

Doubtless the jurisdiction of the court granting the divorce may be inquired into, and, if it appear that the plaintiff had not acquired a *bona fide* domicile in that state at the time of instituting proceedings, the decree is open to a collateral attack (*Bell* v. *Bell,* 181 U. S. 175, 45 L. Ed. 804, 21 Sup. Ct. 551), and a recital in the proceedings of a fact necessary to show jurisdiction may be contradicted. (*Thompson* v. *Whitman,* 18 Wall. 457, 21 L. Ed. 897; *Streitwolf* v. *Streitwolf,* 181 U. S. 179, 45 L. Ed. 807, 21 Sup. Ct. 550; *Andrews* v. *Andrews,* 188 U. S. 14, 47 L. Ed. 366, 23 Sup. Ct. 237.)

Subject to these conditions, each state has the right to regulate the marital status of its citizens, at least so far as to determine in what manner and by whom marriages may be solemnized, what shall be deemed the age of consent, what obligations are assumed, what property rights are created, for what causes divorces shall be granted, for what length of time the domicile of plaintiff shall have been acquired prior to the institution of the proceedings, and in what manner notice shall be given to the defendant. Nor is the power of the legislature in this connection ousted by the fact that the other party to the contract resides in another state, provided that in case of proceedings adverse to such party he or she shall be given such notice as due process of law requires. If such proceedings be *in rem* or *quasi in rem,* notice by publication is ordinarily deemed sufficient. But in case of actions *in personam* for the recovery of damages, personal service within the jurisdiction is vital. to the proceedings. (*Pennoyer* v. *Neff,* 95 U. S. 714, 24 L. Ed. 565; *Huling* v. *Kaw Valley R. & I. Co.,* 130 U. S. 559, 32 L. Ed. 1045, 9 Sup. Ct. 603.)"

McCARRAN, J., dissenting:

From the opinion of Justice NORCROSS, as well as from the concurring opinion of Chief Justice TALBOT, I dissent.