[No. 2230]

## EVELYN WOODS MERRITT, APPELLANT, *v.* FREDERICK CHARLES MERRITT, RESPONDENT.

[160 Pac. 22; 164 Pac. 644]

1. DOMICILE—EFFECT OF MARRIAGE.
   At common law, it was a well-founded rule that a woman on her marriage lost her own domicile and acquired that of her husband.

2. DOMICILE—WIFE'S RIGHT TO ACQUIRE.
   A wife may acquire and maintain a domicile separate from that of her husband.

3. DIVORCE—JURISDICTION.
   A complaint in divorce alleging plaintiff's residence in W. county, that defendant is within the jurisdiction of the court and can be served in W. county, gives the court jurisdiction under act of February 23, 1915 (Stats. 1915, c. 28), section 1, amending Stats. 1861, c. 33, sec. 22, giving jurisdiction if defendant can be found in the county.

### ON REHEARING

1. DIVORCE—BONA FIDE RESIDENCE—EVIDENCE.
   Evidence in a suit for divorce *held* sufficient to establish plaintiff's *bona fide* residence within the state, though she admitted she was living at a hotel and owned no property within the state.

APPEAL from Second Judicial District Court, Washoe County; *R. C. Stoddard,* Judge.

Action for divorce by Evelyn Woods Merritt against Fred Charles Merritt. From a judgment that the court was without jurisdiction and an order denying plaintiff's motion for a new trial, plaintiff appeals. **Judgment and order reversed.**

*M. B. Moore,* for Appellant:

Under the law and the facts as presented in the record, appellant is entitled to an order of this court that this action be remanded, with instructions to the lower court to enter a decree of divorce as prayed for in the complaint; or if, after a full consideration of all the facts, this court is of the opinion that the trial court was without jurisdiction, appellant is entitled to an order remanding the case, with instructions to the lower court to vacate its former order and dismiss the action.

Unless a fraud was perpetrated upon the court, the lower court had jurisdiction, and, having jurisdiction, should have granted the relief prayed for. (*Wallace* v. *Wallace,* 50 Atl. 788.)

The residence of a party must be construed in accordance with the provisions of section 3609, Revised Laws of 1912, and section 1, Statutes of 1913, p. 493. (*Fleming* v. *Fleming,* 134 Pac. 445.)

Our laws are enacted and our courts organized for the benefit, protection and relief of our own people, and of those who may bring themselves within the provisions of our statutes; and it is not a question for this court to determine what view a court of some other state, whose laws and needs are different from ours, may take. The legislature having passed the act, it is the duty of our courts to enforce it and to construe it in accordance with the intention of the legislative body enacting it, regardless of the opinion of the courts of other states. As has been well said by this court, it is not the duty, privilege, or within the powers of the courts of this state to legislate something into an act not fairly intended by the legislature. (*Tiedemann* v. *Tiedemann,* 36 Nev. 494.)

Ordinarily an appellate court will not disturb, but will

adopt, the findings of the trial court where there is a conflict of the evidence. The rule is otherwise, however, where there is a substantial failure of the evidence to support the findings. (*Miller* v. *Miller*, 64 Pac. 415.)

The question of residence at the trial of such a case as this is a question of fact, the same as any other material allegation in the complaint. (*Winans* v. *Winans*, 28 L. R. A. 992; *Sneed* v. *Sneed*, 123 Pac. 314; *Miller* v. *Miller*, 64 Pac. 415.)

*Hoyt, Gibbons & French, Amici Curiæ:*

There was no intention on the part of the trial court to repudiate the authority of the well-known case of *Tiedemann* v. *Tiedemann*, 36 Nev. 494. The court recognized the authority of the Tiedemann case, but believed that the case at bar lacked proof of a showing of intent on the part of plaintiff to reside in Nevada; consequently the court was obliged to find want of jurisdiction. No part of the opinion of the court is devoted to a discussion of the weight of the evidence taken, nor of the sufficiency of the evidence. All that is said by the court seems to have been directed to the question of the sufficiency of the complaint. The finding of fact upon which the court based the judgment of dismissal was that "the proof submitted is not sufficient to give the court jurisdiction in said cause." This finding can be reversed only if this court concludes from an inspection of the testimony taken that all of the elements of jurisdiction were in fact sufficiently proved by the plaintiff and her witnesses. *Bona fide* residence is essential, in addition to bodily presence within the county, which *bona fide* residence is just as essential where the length of residence, as in this case, is not important, as where the length of residence is important. If the evidence fails to disclose that the plaintiff was a *bona fide* resident, it would follow that one essential is missing, and that the lower court was therefore justified in its finding.

While it may be true that there is no evidence before the court which negatives the *bona fides* of the residence

of plaintiff, it is equally true that there is not one word of testimony to be found in any part of the record that shows that she adopted this state or the county as her home or domicile within the meaning of the word residence as commonly applied in divorce proceedings. Merely to come to this state and remain long enough to obtain a divorce does not constitute residence within the meaning of the law of divorce. (*Presson* v. *Presson*, 38 Nev. 203.)

By the Court, McCARRAN, J.:

This is an appeal from a judgment rendered by the district court of the Second judicial district and from an order denying appellant's motion for a new trial.

The action in the lower court was one for divorce. The judgment and decree rendered by the court below was as follows:

"It is therefore ordered, adjudged and decreed that the court is without jurisdiction in said cause; and it is therefore ordered, adjudged and decreed that the plaintiff take nothing by this action."

By this decree as entered and found in the records, it must be assumed that the court dismissed the proceedings for want of jurisdiction.

While it might appear that the court attempted to make findings on the merits of the case, it will not be presumed here on review that such was in reality the intention of the court, inasmuch as the court by its judgment and decree found itself without jurisdiction to entertain the cause. If the court was without jurisdiction, either by reason of the subject-matter of the action or by reason of the failure of the parties to bring themselves within that jurisdiction, it will not be contended, we apprehend, that the court had any power to determine the merits of the action. Nor do we assume, in view of the form of the judgment, that the court in reality attempted to determine the case on its merits.

In this proceeding, we are confronted with a situation

that brings before us again the much-discussed divorce statute of our state.

Section 1 of appellant's complaint in the court below sets forth:

"That plaintiff resides in the city of Reno, county of Washoe, State of Nevada; and that said defendant is at the time of signing and filing of this complaint within the jurisdiction of this court and that service of the summons and other process may be made upon him in Washoe County, Nevada."

Our divorce statute, enacted by the legislature of 1915, approved February 23, 1915, is in part as follows:

"SEC. 22. ˙ Divorce from the bonds of matrimony may be obtained, by complaint under oath, to the district court of the county in which the cause therefor shall have accrued, or in which the defendant shall reside or be found, or in which the plaintiff shall reside, if the latter be either the county in which the parties last cohabited, or in which the plaintiff shall have resided six months before suit be brought, for the following causes.   *   *   *"
(Stats. 1915, p. 26, amending Stats. 1861, c. 33.)

The power of our legislature to enact this statute, and others of similar nature, wherein that body, representing the people of the state, seeks to regulate marriage and divorce, will, we apprehend, not be questioned.   As was said by Mr. Chief Justice Talbot in his concurring opinion in the case of *Tiedemann* v. *Tiedemann*, 36 Nev. 501:

"Generally speaking, the marital status of the citizen, the age of consent, the manner in which marriage may be solemnized, the obligations it imposes affecting personal or property rights, the time, condition of residence and causes required for obtaining divorce, are all within the control of the state and subject to her laws as enacted by the legislature."

We have here before us, then, the policy of our state applicable to the subject of divorce as that policy is framed and enacted by the legislature, the representatives of the people.   The courts have neither the power

nor the right to read into that statute anything not there found, nor to strike therefrom that which is there presented. The legislature in enacting this statute sought to prescribe certain jurisdictional prerequisites, in view of which or on the presentation of which the district courts of the state might take jurisdiction where parties sought to secure dissolution from the bonds of matrimony. Any one of five conditions presented in a verified complaint would, as we view this statute, be sufficient to give the district court jurisdiction. The district court might take jurisdiction: (1) If the cause of action therefor accrued in the county; (2) if the defendant resides in the county; (3) if the defendant may be found in the county; (4) if the plaintiff reside in the county, if such county be the one in which the parties last cohabited; (5) if the plaintiff reside in the county for a period of six months before suit be brought. Time of residence is not essential to any of the conditions, save and except the fifth; and in that case a residence of six months is a part of the condition.

The complaint in this action makes the specific allegation that plaintiff resides in the city of Reno, county of Washoe, State of Nevada; and further that the defendant at the time of signing and filing of the complaint was within the jurisdiction of the court and that service of summons and other process might be made upon him in Washoe County, Nevada. The return of the sheriff shows that the summons was personally served upon the defendant, Frederick Charles Merritt, within Washoe County. The appellant in this action sought to confer jurisdiction upon the district court of Washoe County under the third condition as we have above enumerated them, namely, by the allegation that the defendant was to be found within Washoe County and hence within the jurisdiction of the Second judicial district court.

1. In the case at bar, as in all cases of a similar character, the important question to determine is that of jurisdiction. In determining this we must look to the

status of the parties.   This brings us to the question of domicile or residence.   At common law, it was a well-founded rule that a woman on her marriage loses her own domicile and acquires that of her husband.   (*Barber* v. *Barber,* 16 U. S. 582, 16 L. Ed. 226; *Harrison* v. *Harrison,* 20 Ala. 629, 56 Am. Dec. 227; *Jenness* v. *Jenness,* 24 Ind. 355, 87 Am. Dec. 335; *Hairston* v. *Hairston,* 27 Miss. 704, 61 Am. Dec. 530; Ann. Cas. 1912D, 400, see note.)

2.   That she may acquire a separate and distinct domicile from that of her husband is a rule established by the courts of England (2 Bish., Marriage and Divorce, sec. 63), as well as by the courts of the several jurisdictions in the United States (*Frary* v. *Frary,* 10 N. H. 61, 32 Am. Dec. 395; *Tolen* v. *Tolen,* 2 Blackf. [Ind.] 21 Am. Dec. 742; *Moffatt* v. *Moffatt,* 5 Cal. 280; *Haddock* v. *Haddock,* 201 U. S. 562, 26 Sup. Ct. 525, 50 L. Ed. 867, 5 Ann. Cas. 1; *Succession of Benton,* 106 La. 494, 31 South. 123, 59 L. R. A. 135).   The right of the wife to acquire and maintain a separate domicile from that of her husband arises out of the necessity presenting itself in the case and is based upon the assertion on the part of the complaining wife of grounds or causes by reason of which the matrimonial unity no longer exists in fact.   (*Atherton* v. *Atherton,* 155 N. Y. 129, 49 N. E. 933, 40 L. R. A. 291, 63 Am. St. Rep. 650; *Frary* v. *Frary, supra; Buchholz* v. *Buchholz,* 63 Wash. 213, 115 Pac. 88, Ann. Cas. 1912D, 395, see note; *Duxstad* v. *Duxstad,* 17 Wyo. 411, 100 Pac. 112, 129 Am. St. Rep. 1138; *Jenness* v. *Jenness, supra.*)

3.   The allegation of those causes which of themselves indicate that the marriage unity no longer exists constitutes the basis for the rule that recognizes the right of the wife to prosecute her suit for divorce in a domicile other than that of her husband.   Coupled with such allegations, an averment of residence constitutes the basis of jurisdiction.

This entire matter, in so far as the wording of the statute is concerned and its meaning, force, and significance, was gone into at length by this court in the case

of *Tiedemann* v. *Tiedemann, supra,* and the decision of this court in that instance, in so far as it dwells upon the particular provision of the statute here mentioned, will not be disturbed.

It will be remembered that so far as the courts are concerned, they have nothing to do with the establishment of public policy or the question of expediency; those are matters for the legislative branch of the government exclusively. It is but for the courts to interpret a statute and enforce it in the light of constitutional provisions. There is nothing in either international law or in the organic law of our state that prohibits or restricts the legislature from enacting a provision such as the statute here in question, wherein it seeks to deal with the matter of divorce between citizens or residents.

The question of fraud or collusion does not arise here. It is not presented to us in any form. If it is present in the case, the trial court, when the matter comes up anew, can determine that for itself upon the merits.

Viewing it as we do, that the case of *Tiedemann* v. *Tiedemann, supra,* was determinative of the matter as to the jurisdiction of the trial court, it follows that the judgment of the court and the order denying the motion for a new trial must be reversed.

It is so ordered.

## ON REHEARING

By the Court, MCCARRAN, C. J.:

On petition of *amici curiæ* in behalf of the district court of the Second judicial district, we granted rehearing in this matter, in order that there might be presented any matter which we inadvertently or otherwise overlooked on the original hearing.

On the former consideration of this case we reversed the judgment of the trial court, on the rule as settled by this court in the cases of *Tiedemann* v. *Tiedemann,* 36 Nev. 501, 137 Pac. 824, and *Presson* v. *Presson,* 38 Nev. 203, 147 Pac. 1081; and to these authorities might be

added *Aspinwall* v. *Aspinwall*, 40 Nev. 55, 160 Pac. 253, Harvard Law Review, February, 1917, p. 391.

Counsel in their petition say:

"We believe that no matter of law has arisen in this case upon which there is any difference between this court and the court below. Both courts entertain the belief, in harmony with the doctrine of both the Tiedemann and Presson cases (36 Nev. 501, 137 Pac. 824, 38 Nev. 203, 147 Pac. 1081), that *bona fide* residence is just as essential where the length of residence, as in this case, is not important, as where the length of residence is important."

Continuing, they say:

"If, then, an inspection of the evidence in this case fails to disclose that the plaintiff was a *bona fide* resident, it would follow that one essential was missing, and that the court was therefore justified in finding that 'the proof submitted is not sufficient to give the court jurisdiction.'"

Our inclination is rather to affirm our former judgment without extended comment; but we deem it not inadvisable here to refer to the evidence as presented in this case as to the *bona fide* residence of appellant. In her complaint for divorce she alleges:

"That plaintiff resides in the city of Reno, county of Washoe, State of Nevada."

In testifying as a witness in her own behalf at the original hearing, the record discloses the following:

"Q. You may state your name. A. Evelyn Woods Merritt. Q. Where do you reside, Mrs. Merritt? A. Reno, Nevada. Q. Whereabouts in Reno? A. At the Riverside Hotel."

By the testimony of H. H. Clark it was disclosed that appellant had been a resident of that establishment since January 16, 1916, and continuously thereafter to and including the date of the trial in the court below.

On the hearing in the lower court and after the suggestion of the trial court to the effect that he had very serious doubts as to the jurisdiction of the court in the matter, the appellant was again interrogated, and testified:

"Q. Have you any other home, or claim any other home or residence than in the city of Reno? A. No."

Following this, the court interrogated as follows:

"Q. Do you own any property in Reno? A. No. Q. In the State of Nevada? A. No. Q. Have you any business or profession or anything that engages your attention here at the present time or since you have been here. A. No; I simply live here."

On being further interrogated by her attorney she testified:

"Q. Just one question: Your income is derived from what source principally, Mrs. Merritt? A. Several mortgages, and some bonds. Q. And some stocks? A. Bonds. Q. And when you have been in New York and other sections of the country, where have you lived, at hotels, or have you had a home? A. I have lived at hotels always."

Whatever may have been in the mind of the trial court from which he could arrive at the conclusion that there was a lack of jurisdictional facts presented, the record fails to disclose other than a *bona fide* residence within the jurisdiction. The trial court apparently took the witness in hand, and her answers in response to his interrogatories were to the effect that she lived at a hotel in the city of Reno; that she owned no property in Washoe County nor at any other place within the state. Neither of these facts would to our mind indicate anything militating against the *bona fides* of her residence within the state. The time was when hotels and inns were not regarded as permanent places of abode, but in this modern day and age no such intimation or presumption is justified. So far as the showing made in the court below was concerned, the facts disclosed were sufficient, in our judgment, to warrant the court in assuming jurisdiction and rendering the decree prayed for. Both parties were before the court. Service of summons was made within the county. The facts presented in the court below, as disclosed by the record, sustained the allegations in the complaint of appellant, and it is our judgment

that the court should have assumed jurisdiction and should have rendered the decree of divorce.

In the case of *Aspinwall* v. *Aspinwall, supra,* we reasserted the rule that the question of residence is one that may depend on the act and intention of the party seeking to establish the same.

There was nothing disclosed by the testimony of the appellant, neither was there anything indicated by her acts or conduct, as we find them, that would go to say that her residence in the county was other than *bona fide,* and certainly nothing to justify an inference contra.

The judgment of the lower court is reversed, with instructions to that tribunal to enter the decree of divorce as prayed for.

It is so ordered.