141 Nev., Advance Opinion 59

IN THE SUPREME COURT OF THE STATE OF NEVADA

ROBERT JOSEPH OSHIRO,
Appellant,
vs.
CHERLYN KAYE OSHIRO,
Respondent.

No. 89205




Appeal from an amended divorce decree granting alimony. Fifth Judicial District Court, Nye County; Kimberly A. Wanker, Judge.

*Affirmed.*

Roberts Stoffel Family Law Group and Lynn N. Hughes, Las Vegas,
for Appellant.

McDonald Carano LLP and Emily M. Dennis, Rory T. Kay, and John A. Fortin, Las Vegas,
for Respondent.

---

BEFORE THE SUPREME COURT, PICKERING, CADISH, and LEE, JJ.

*OPINION*

By the Court, PICKERING, J.:

This is a divorce action in which the district court awarded one spouse alimony after considering, among other factors, all sources of income available to the divorcing couple, including the other spouse's military disability benefits. While Nevada law instructs courts to consider a broad array of factors to reach just and equitable alimony awards, NRS 125.165



25-52060

prohibits dividing a veteran's military disability benefits for alimony purposes. The question is whether NRS 125.165 goes so far as to also prohibit courts from even considering military disability benefits as part of their alimony calculations. It does not. We hold that when setting alimony awards, a court may consider the existence and value of a divorcing veteran's military disability benefits. The district court's amended divorce decree is thus affirmed.

I.

Cherlyn Oshiro-Gadberry and Robert Oshiro married in 1999 in Las Vegas, at the ages of 49 and 53, respectively. Prior to marriage, Robert served in the military for eight years, four of which were in the Vietnam War, and he sustained a service-connected injury during that time. The year after Cherlyn and Robert married, Robert applied for military disability benefits. From then on, Cherlyn and Robert lived off those benefits along with the incomes they earned working in Las Vegas. The couple combined these resources into a joint bank account from which they paid their bills and expenses. Cherlyn stopped working in 2007 following a car accident, and Robert retired in 2013, after which the couple relied exclusively on Robert's military disability benefits and their combined Social Security benefits. As Robert's disability worsened, Cherlyn served as his primary caretaker.

In 2023, Cherlyn filed for divorce. After some dispute, the parties resolved the division of their community property, leaving only alimony for the district court to decide. At the time of trial, Robert received $3,946.25 per month in military disability benefits and $2,071 per month in Social Security benefits (totaling $6,017.25 per month), while Cherlyn received $998 per month in Social Security benefits. Robert's trial testimony also suggested that his daughter, with whom he was living after

moving out of the couple's shared residence, paid some of his expenses, though he did not provide specifics. During the divorce proceedings, Cherlyn requested $3,400 in monthly alimony (roughly half the couple's total monthly revenue of $7,015.25). Robert countered that the court was permitted only to consider the couple's Social Security benefits in its calculations and that, therefore, the proper alimony award was $536.50, splitting the difference between their respective Social Security incomes.

After considering the above along with evidence of each party's financial need, expenses, retirement age, inability to work due to disability, and more, the district court struck middle ground. Over Robert's objections, the court considered Robert's military disability benefits to determine that he "was the main income producer during the course of the marriage" and that, "based upon all the financial resources available to [him], he has the ability to pay alimony" of $2,000 per month. The district court did not specify how Robert should cover that amount (i.e., by paying from his military disability benefits or his Social Security benefits), but it acknowledged throughout the proceedings that NRS 125.165 prohibits courts from dividing a veteran's military disability benefits to cover alimony. The $2,000 monthly award came just shy of this result, effectively requiring Robert to pay 96.6 percent of his Social Security benefits to Cherlyn and leaving him to live almost exclusively off his military disability benefits. Robert appealed from the amended divorce decree.

II.

Statutory construction and caselaw interpretation present questions of law that are reviewed de novo, *Martin v. Martin*, 138 Nev. 786, 789, 520 P.3d 813, 817 (2022), while challenges to the fairness of an alimony award are reviewed for abuse of discretion. *Wolff v. Wolff*, 112 Nev. 1355, 1359, 929 P.2d 916, 918-19 (1996) ("[B]efore the appellate court will

interfere with the trial judge's . . . alimony award, it must appear on the entire record in the case that the discretion of the trial judge has been abused.") (internal quotation marks omitted).

A.

"Alimony is financial support paid from one spouse to the other whenever justice and equity require it." *Rodriguez v. Rodriguez*, 116 Nev. 993, 999, 13 P.3d 415, 419 (2000). NRS 125.150 authorizes courts to award alimony "as appears just and equitable," NRS 125.150(1)(a), and instructs that they "*shall consider*" 11 factors in doing so, NRS 125.150(9) (emphasis added). Atop this list is the "financial condition of each spouse." NRS 125.150(9)(a); *see also* 24A Am. Jur. 2d *Divorce and Separation* § 668 (2018) ("One of the primary factors to be considered in determining the amount of an alimony award is the financial condition of the parties, particularly the recipient spouse's financial need and the payor spouse's ability to pay . . . .") (footnotes omitted). A party's "financial condition" encompasses their income (which may include Social Security benefits, disability benefits, and retirement pay), assets, expenses, and general financial need. *Divorce and Separation*, *supra* § 668 & n.3. This court has affirmed that "[a]limony, in its most elementary form, is based on the receiving spouse's need and the paying spouse's ability to pay." *Kogod v. Cioffi-Kogod*, 135 Nev. 64, 68, 439 P.3d 397, 401 (2019).

Though NRS 125.150 grants courts broad discretion to craft just and equitable alimony awards, this authority is qualified by the limitations in NRS 125.165. *See* NRS 125.150 (beginning with the language "[e]xcept as otherwise provided in . . . [NRS] 125.165"). NRS 125.165 states that "in making an award of alimony, the court shall not: (1) Attach, levy or seize by or under any legal or equitable process . . . [or] (2) Make an assignment or

otherwise divide any federal disability benefits awarded to a veteran for a service-connected disability." The parties agree that this provision prevents courts from awarding a divorcing veteran's military disability benefits to their spouse to satisfy their alimony obligations. However, Robert argues that NRS 125.165 also prevents the district court from considering his military disability benefits in any way, including for equitable purposes, in its alimony calculations. He further argues that requiring him to devote 96.6 percent of his Social Security benefits to pay alimony—an outcome that could only have been reached by considering his military disability benefits—amounts to an impermissible equitable division of those benefits.

Neither the statute's text, its legislative history, nor relevant caselaw supports Robert's argument. Statutory construction requires first examining the statutory text, and if the text is plain and unambiguous, "this court will give the language its ordinary meaning and not go beyond it." *Mason v. Cuisenaire*, 122 Nev. 43, 50, 128 P.3d 446, 450 (2006). The plain text of NRS 125.165 prohibits courts from taking certain actions involving federal benefits received for service-connected disabilities: they cannot "[a]ttach, levy or seize [the benefits] by or under any legal or equitable process," nor can they "[m]ake an assignment or otherwise divide" the benefits. NRS 125.165(1)-(2). On its face, this language prohibits only direct action against the benefits themselves; neither subpart expressly prohibits courts from factoring the existence or value of military disability benefits into their statutorily authorized review of the NRS 125.150(9) factors.

Robert nevertheless argues that unless the district court is barred from considering his military disability benefits, the actual result of the award here is to equitably split those benefits contrary to the statute.

But the doctrine of *noscitur a sociis* "teaches that 'words are known by—acquire meaning from—the company they keep.'" *Bldg. Energetix Corp. v. EHE, LP*, 129 Nev. 78, 85, 294 P.3d 1228, 1234 (2013) (quoting *Ford v. State*, 127 Nev. 608, 622 n.8, 262 P.3d 1123, 1132 n.8 (2011)). "When several [verbs] are associated in a context suggesting that the words have something in common, they should be assigned a permissible meaning that makes them similar." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 195 (2012). The prohibitive verbs in NRS 125.165—attach, levy, seize, assign, and divide—are words associated with collections actions. To insert the verb "consider" into NRS 125.165 would be to ignore the context that binds the listed verbs together while simultaneously rendering those verbs superfluous. *See Clark County v. S. Nev. Health Dist.*, 128 Nev. 651, 656, 289 P.3d 212, 215 (2012) ("Statutes should be read as a whole, so as not to render superfluous words or phrases or make provisions nugatory."). It would also contradict the statutory instruction that courts "shall consider" spouses' financial conditions when setting alimony. NRS 125.150(9). Granted, the words "or otherwise divide" after the phrase "make an assignment" signal expansiveness, but the word "divide" still connotes an action taken against the benefits themselves, not their passive consideration. Because "courts have neither the power nor the right to read into [a] statute anything not there found," *Merritt v. Merritt*, 40 Nev. 385, 389-90, 160 P. 22, 22 (1916), *aff'd*, 40 Nev. 385, 164 P. 644 (1917), the plain text of NRS 125.165 forecloses Robert's argument.

Although the general rule is that "[w]hen the language of a statute is plain and unambiguous, the court is not permitted to look for meaning beyond the statute," *Pitmon v. State*, 131 Nev. 123, 129, 352 P.3d 655, 659 (2015), this court does on occasion consult legislative history in

examining seemingly unambiguous text, *Urias v. First Jud. Dist. Ct.*, 141 Nev., Adv. Op. 24, 568 P.3d 576, 580 (2025); *see also Sandpointe Apartments v. Eighth Jud. Dist. Ct.*, 129 Nev. 813, 828, 313 P.3d 849, 859 (2013) ("Any lingering doubt regarding [a statute's meaning] is quickly put to rest by reference to its legislative history."). As originally introduced, NRS 125.165 stated that courts could "not consider" military disability benefits when determining alimony. A.B. 140, 78th Leg. (Nev. 2015). The bill's sponsors stated that their intent was to bring Nevada "into compliance with the federal code found in [U.S.C.] Title 38, Chapter 11." *See, e.g.*, Hearing on A.B. 140 Before the Assemb. Comm. on Judiciary, 78th Leg., at 3 (Nev., Mar. 5, 2015) (quoting Assemblymember Jim Wheeler). The specific law they had in mind was 38 U.S.C. § 5301, an anti-attachment statute providing that federal veteran's benefits "shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary." *See id.* at 4; *see also Rose v. Rose*, 481 U.S. 619, 637 (1987) (O'Connor, J., concurring) (stating that 38 U.S.C. § 5301 was "not intended to protect the veteran against claims *by his family*") (emphasis added).

But A.B. 140 changed substantially during the legislative process. After thorough debate, the legislature concluded that the bill as originally written swept beyond the scope of 38 U.S.C. § 5301 by unduly blinding courts to crucial information about divorcing parties' financial conditions. *See, e.g.*, Hearing on A.B. 140 Before the Assemb. Comm. on Judiciary, 78th Leg., at 8 (Nev., Mar. 20, 2015) (comment from Assemblymember Elliot T. Anderson that "we were told [A.B. 140] was straight codification of the federal law, but now it seems the intent is something beyond that"). To correct this issue, A.B. 140 was revised to

remove the word "consider" and replace it with the current prohibitive verbs, which more closely mirror 38 U.S.C. § 5301: "attach, levy or seize" and "make an assignment or otherwise divide." The excision of "consider" confirms that the natural reading of NRS 125.165 is the correct one and that it would be a mistake to interpret the statute as broadly as Robert urges.

Neither *Mansell v. Mansell*, 490 U.S. 581 (1989), nor *Howell v. Howell*, 581 U.S. 214 (2017), on which Robert relies, changes this analysis. In *Mansell*, the Supreme Court held that under the Uniform Services Former Spouses' Protection Act (USFSPA), 10 U.S.C. § 1408, when a veteran waives their right to military retirement pay to receive or augment disability benefits, those disability benefits may *not* be treated as community property and are instead viewed as indivisible separate property. 490 U.S. at 594-95. *Howell* built upon *Mansell* to hold that state courts also cannot give a veteran's ex-spouse a greater share of the couple's community property to compensate for the fact that the veteran waived military retirement pay (which would be divisible community property available to the ex-spouse) to receive disability benefits (separate property to which only the veteran is entitled). 581 U.S. at 216.

But both *Mansell* and *Howell* narrowly concern a veteran's waiver of their military retirement pay to receive disability benefits in the context of community property division, not alimony. *Mansell*, 490 U.S. at 594-95; *Howell*, 581 U.S. at 216-17; *see also Martin*, 138 Nev. at 790, 520 P.3d at 817-18 (declining to broaden these cases to preempt enforcement of a divorce settlement). Robert concedes that he does not receive military retirement pay, so it is not at issue in this case. Further, community property division and alimony are two distinct components of family law

that implicate distinct analyses: the former occurs during the divorce proceeding and provides each spouse with the property accrued during marriage to which they are entitled as a matter of law, whereas alimony is equitable in nature and serves the "post-divorce needs and rights of the former spouse." *Shydler v. Shydler*, 114 Nev. 192, 197-98, 954 P.2d 37, 40 (1998) (contrasting community property and alimony awards). And *Howell* expressly left courts "free to take account of" a veteran's military disability benefits when evaluating the need for alimony. 581 U.S. at 222.

This distinction also requires that we reject Robert's argument—articulated in briefing, though walked back at oral argument—that the district court violated NRS 125.150(1)(b) by failing to provide a "compelling reason" for its alimony award. NRS 125.150(1)(b) governs the division of community property, not alimony, which is governed by NRS 125.150(1)(a). *See Kogod*, 135 Nev. at 66-79, 439 P.3d at 400-06 (applying NRS 125.150(1)(a) to an alimony issue, then separately applying NRS 125.150(1)(b) to a community property division issue). Because the present case involves only alimony, the district court was not bound by the requirements of NRS 125.150(1)(b) and did not have to provide a "compelling reason" for its decision. Accordingly, the district court's invocation of NRS 125.150(1)(b) in its amended divorce decree was unnecessary, but because it had no impact on the court's determination, it does not provide grounds for disturbing the alimony award.

Finally, an "overwhelming majority of courts" have concluded that military disability benefits can be considered by courts setting alimony. *See In re Marriage of Morales*, 214 P.3d 81, 85 (Or. Ct. App. 2009) (collecting cases reaching this outcome); *Marriage of Strong v. Strong*, 8 P.3d 763, 770 (Mont. 2000) (same). These courts have reasoned that because "'Congress

clearly intended veterans' disability benefits to be used, in part, for the support of veterans' dependents,' 'a state court is clearly free to consider post-dissolution disability income and order a disabled veteran to pay spousal support.'" *Strong*, 8 P.3d at 770 (citation omitted) (quoting *Rose*, 481 U.S. at 631, and *Clauson v. Clauson*, 831 P.2d 1257, 1263 n.9 (Alaska 1992)); *Conte v. Conte*, No. 87945-COA, 2025 WL 1770864, at *5 (Nev. Ct. App. June 25, 2025) (concluding that the district court abused its discretion by refusing to consider military disability benefits for alimony purposes). The only court that favors Robert's position did so by extending *Mansell* to govern alimony calculations. *Ex Parte Billeck*, 777 So. 2d 105, 108-09 (Ala. 2000) (holding that consideration of military disability benefits during alimony "circumvent[s] the mandates of the *Mansell* decision"). As discussed above, we subscribe to a narrower view of *Mansell*. *Martin*, 138 Nev. at 790-91, 520 P.3d at 817-18. And later decisions from other courts have considered and rejected *Billeck*'s approach. *See, e.g.*, *Morales*, 214 P.3d at 85 (discussing *Billeck* but affirming a "limited" reading of *Mansell*); *Urbaniak v. Urbaniak*, 807 N.W.2d 621, 626 (S.D. 2011) (same).

We do not stray from the pack today. Doing so would obscure information that courts must weigh to craft just and equitable alimony awards, as authorized by statute. NRS 125.150(1)(a). Nevada is uniquely situated compared to other states because not all states have NRS 125.165 analogs explicitly applying the anti-attachment logic of 38 U.S.C. § 5301 in the family law context, but the text and legislative history of NRS 125.165 confirm that the existence of this provision alone does not compel a different outcome. On its own terms, the plain language of NRS 125.165 does not go as far as Robert would like. The district court was thus not precluded from

considering Robert's military disability benefits when reaching its alimony determination.

B.

Though we reject Robert's statutory arguments, it remains consequential that the amended divorce decree requires him to pay nearly all his Social Security benefits in alimony and rely almost exclusively on his military disability benefits to sustain himself. Robert calls this outcome inequitable, "extreme and improper," and an "obvious attempt to equitably divide Robert's Veteran's Disability to Cherlyn." Under the abuse of discretion standard, "[r]ulings supported by substantial evidence will not be disturbed on appeal." *Williams v. Williams*, 120 Nev. 559, 566, 97 P.3d 1124, 1129 (2004) (internal quotation marks omitted). "Substantial evidence is that which a sensible person may accept as adequate to sustain a judgment." *Id.*

Robert failed to clearly state this standard until oral argument—his briefing merely suggests it through the above language—but even if we construe his argument as asserting an abuse of discretion, the record provides sufficient evidence to survive such review. Within the parameters set by NRS 125.150(1)(a) and NRS 125.150(9), the district court considered evidence of the parties' financial conditions, earning capacities, ages, health, contributions in the home, and standard of living during their marriage. It concluded that Cherlyn's "financial need is great and exceeds her social security income," "being that she lives alone in Virginia and was forced to start over with nothing, living in an apartment with minimal furniture, no transportation, and little to no ability to earn an adequate income." Robert had the opportunity to contest the factual basis underlying this determination but chose to raise statutory arguments which, for the reasons discussed in this opinion, fail. Based upon the record and

arguments presented, we conclude that the district court acted within its discretion to reach the $2,000 monthly alimony award.

We do not underestimate, however, that under the amended divorce decree, Robert must devote one of his few income streams to paying alimony. NRS 125.165's express prohibition on the seizure or division of military disability benefits for alimony purposes perhaps suggests an outward boundary for what the district court could have ordered in this case, and in so doing seems to diverge from analog statutes in other jurisdictions. For example, 38 U.S.C. § 5301's anti-attachment language does not mention alimony or child support; in the face of this omission, the Supreme Court found that the provision's protections do not apply with the same force to claims by family members as they do to claims by traditional creditors. *Rose*, 481 U.S. at 631-34 (holding that the USFSPA does not preclude enforcement of a contempt order against a veteran for failure to pay child support, even where the veteran's only means of satisfying their obligation is with military disability benefits). In contrast, and unlike peer state statutes, NRS 125.165 expressly applies the same anti-attachment language to both community property division *and alimony*. *Contra* Cal. Civ. Proc. Code § 483.013 (West 2025) (analog statute specifically disclaiming that it applies to child and spousal support enforcement); Wyo. Stat. Ann. § 20-2-114(b) (West 2025) (reference statute for the original draft of NRS 125.165, restricting community property division without mentioning alimony). Because of these differences, we reserve for another day the more difficult question, not presented by this appeal, of whether NRS 125.165 would invalidate an award that could be paid only by drawing from military disability benefits. Here, the amended divorce decree comes *just* up to that line, but it ultimately stays within the bounds by leaving

Robert's military disability benefits to Robert. The district court determined that "based upon all financial resources available to [Robert], he has the ability to pay alimony" of $2,000 per month without dipping into those funds. The district court therefore steered clear of the potential issue with respect to NRS 125.165 outlined above.

III.

Given the broad authority granted to courts to award alimony as they deem just and equitable, the inclusive list of factors they may consider in doing so, and the leeway afforded by the abuse of discretion standard, we uphold the district court's alimony award in this case. NRS 125.165 prohibits a court from directly dividing military disability benefits for alimony purposes, but by its plain language, it does not prohibit a court from considering the existence or value of those benefits as part of a holistic review of the divorcing couple's financial circumstances and capacity to pay alimony. Further, NRS 125.150(1)(b) applies distinctly to the division of community property, not alimony. The amended divorce decree is thus affirmed.

Pickering, J.

Pickering

We concur:

Cadish, J.

Cadish

Lee, J.

Lee