*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| KENDRE JONES, ) | |
| ) | Supreme Court No. S-17977 |
| Appellant, ) | |
| ) | Superior Court No. 3AN-18-07745 CI |
| v. ) | |
| ) | O P I N I O N |
| VIEANNA JONES, ) | |
| ) | No. 7586 – March 4, 2022 |
| Appellee. ) | |
| ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Andrew Guidi, Judge.

Appearances: Kendre A. Jones, pro se, Hephzibah, Georgia, Appellant. Roberta C. Erwin, Palmier ~ Erwin, LLC, Anchorage, for Appellee.

Before: Winfree, Chief Justice, Maassen, and Borghesan, Justices. [Carney, Justice, not participating.]

BORGHESAN, Justice.

## I. INTRODUCTION

Federal law prohibits state courts from dividing military disability pay when equitably dividing marital property upon divorce. In this case a divorcing couple's property settlement agreement required the husband to pay the wife $1,200 per month from the non-disability portion of the husband's military retirement. The agreement also provided that if the husband took any action that reduced the wife's share of this

payment, the husband would directly pay the wife so as to indemnify her against the reduction. After the husband's retirement was converted to disability pay and the wife stopped receiving her monthly payment, she moved to enforce the settlement agreement's indemnity provision. The superior court initially concluded that the indemnity provision was unenforceable because it violated federal law. But when the wife then moved to set the settlement agreement aside, the court decided to enforce the indemnity provision and ordered the former husband to make the monthly $1,200 payment and to pay arrears. We affirm, holding that federal law does not preclude enforcing one spouse's promise to pay another a sum of money each month even if the source of the money is military disability pay.

## II. FACTS AND PROCEEDINGS

### A. Facts

Vieanna and Kendre A. Jones were married in October 1993 and separated in June 2018. After working with a mediator, Vieanna and Kendre reached an agreement to divide their property. They then filed for divorce in July 2018. Vieanna filed proposed orders reflecting the parties' mediated agreement in superior court. One of these orders set forth the terms for dividing Kendre's military retirement pay. It stated that Vieanna was awarded "$1,200.00 per month from the non-disability portion [of Mr.] Jones'[s] military retirement monthly benefit." It then defined "military retirement" as including "all amounts of retired pay HUSBAND actually or constructively waives or forfeits in any manner and for any reason or purpose, including but not limited to any post-divorce waiver made in order to qualify for Veterans Administration benefits . . . . It also includes any sum taken by Husband in addition to or in lieu of retirement benefits." Paragraph 12 of the order contained an indemnification provision:

> If HUSBAND takes any action that prevents, decreases, or
> limits the collection by WIFE of the sums to be paid

hereunder (by application for or award of disability compensation, combination of benefits with any other retired pay, waiver for any reason, including as a result of other federal service, or in any other way), he shall make payments to WIFE directly in an amount sufficient to neutralize, as to WIFE, the effects of the action taken by HUSBAND. HUSBAND shall indemnify WIFE as to any sums paid to HUSBAND that this court order provides are to be paid to WIFE so she will not suffer a reduction in her share of the retired pay as a result of any of his post-divorce actions.

After a hearing at which the superior court received testimony from the parties, the court signed all the proposed orders and granted the parties' divorce.

### B.    Proceedings

#### 1.    Motion to enforce

Almost a year later Vieanna filed a motion to enforce the property settlement and related orders. She claimed that she had stopped receiving her monthly share of Kendre's retirement because Kendre was now receiving 100% veterans' disability pay in lieu of retirement pay.

The court held a hearing on Vieanna's motion in July 2019. Vieanna testified that since the divorce she had been receiving $1,200 a month, but that the payments stopped in June 2019. Kendre presented evidence that in May 2019 he began receiving 100% disability benefits instead of retirement benefits. He testified that he had not "tr[ied] to change anything so that Ms. Jones wouldn't get money." Rather, he had been determined unemployable after a physical exam.

The superior court entered what it first described as "preliminary thoughts" and then ultimately described as a "partial ruling" on the record. The court invoked our

decision in *Guerrero v. Guerrero*,[1] which recognized that federal law prevents a state court from awarding military disability pay to the non-military spouse as part of a property division incident to divorce. We also ruled in *Guerrero* that when a property settlement agreement awards the non-military spouse a share of military retirement pay and then the military spouse elects to receive disability pay in lieu of retirement pay — cutting off the non-military spouse's ability to receive the payments provided for in the settlement agreement — "extraordinary circumstances" may exist to set aside the agreement under Alaska Civil Rule 60(b).[2] In light of this decision, the superior court reasoned that federal law precluded it from enforcing Vieanna's right to the $1,200 per month provided for in the settlement agreement because the money would be coming from Kendre's disability benefits.

But the court noted that if Vieanna had entered the settlement on the assumption that she would receive $1,200 a month, she "may be entitled to a re-evaluation and a re-jiggering, if you will, of the overall settlement that [she] entered into." Accordingly the court said that it would treat Vieanna's motion "as a request for Rule 60(b) relief, and a reconfiguration of the original property settlement." Vieanna responded by telling the court that she would attempt to work out an agreement with Kendre. The court suggested that Vieanna confer with Kendre's attorney and "if you're not able to work something out, you file a motion . . . setting forth how you think the property settlement should be re-done."

### 3. Motion for Rule 60(b) relief

In August 2020 Vieanna moved to set aside the property settlement agreement under Rule 60(b). She claimed that "extraordinary circumstances" were

---

[1] 362 P.3d 432, 440-41 (Alaska 2015).

[2] *Id.* at 444 (discussing Rule 60(b)).

present sufficient to justify relief because the fundamental underlying assumption of the dissolution agreement had been destroyed. Kendre opposed the motion, presenting evidence that after Vieanna's motion to enforce had been denied in July 2019, she had filed a similar pleading in Tennessee, which had been dismissed. He argued that Vieanna's motion was barred by the law of the case and res judicata; that Rule 60(b) relief was inappropriate because too much time had expired since the parties' divorce; and that he could not afford to pay the $15,600 in accumulated back payments that Vieanna claimed he owed her.

The superior court ruled that it was unnecessary to set aside the settlement agreement under Rule 60(b) because the agreement could be enforced:

> The terms of the parties' agreement contemplate[] the eventuality that has transpired (i.e., the elimination of [Kendre]'s non-disability retirement) and requires him to indemnify [Vieanna]. Therefore, the issue is not one of 60(b) relief but rather of enforcement. The undisputed facts establish [Vieanna]'s right to indemnity in the amount of $1200/mo. from [Kendre].

The court denied Kendre's subsequent motion for reconsideration and then issued its judgment requiring Kendre to pay Vieanna $1,200 per month going forward and to pay her $16,800 in arrears, with interest accruing. Kendre appeals.

## III.   STANDARD OF REVIEW

"We construe property settlement agreements in divorce actions in accordance with basic principles of contract law"; "[q]uestions of contract interpretation are reviewed de novo."[3] "We review de novo whether the trial court applied the correct legal rule," including whether a court order concerning payment of federal benefits is

---

[3]     *Id.* at 437 (quoting *Glover v. Ranney*, 314 P.3d 535, 539 (Alaska 2013), *overruled on other grounds by Howell v. Howell*, 137 S. Ct. 1400 (2017)).

consistent with federal law.[4]  We review the superior court's decision to apply the law of the case doctrine for abuse of discretion.[5]

## IV.    DISCUSSION

### A.    The Superior Court Correctly Interpreted And Applied The Indemnity Clause In The Parties' Property Settlement Agreement.

Kendre argues that the superior court improperly interpreted the indemnity provision of the parties' agreement, which requires him to "make payments to [Vieanna] directly in an amount sufficient to neutralize . . . the effects of" any action by Kendre that "prevents, decreases, or limits the collection by [Vieanna] of the sums to be paid hereunder (by application for or award of disability compensation . . . )."  Kendre claims that paragraph 12 applies only if he "takes any action" to reduce the sums owed to Vieanna and that he did not do so; rather, "the government independently determined that Kendre was 100% disabled and unable to work and the government awarded him disability pay."  Kendre also argues that the language of the indemnity provision is ambiguous, so it should be construed against Vieanna because "[s]he, presumably with the assistance of an attorney, on her own letterhead, presented the court with the proposed [o]rder," while Kendre "was pro se and did not prepare any of the settlement paperwork."  We reject these arguments.

First, the meaning of the indemnity provision is not ambiguous.  It expressly provides for indemnification in the event that Kendre's retirement benefits are affected by his receipt of disability pay.  Paragraph 12 of the court order incident to the final settlement agreement begins: "If HUSBAND takes any action that prevents, decreases, or limits the collection by WIFE of the sums to be paid hereunder (by

---

[4]        *Glover*, 314 P.3d at 539.

        [5]        *Hallam v. Holland Am. Line, Inc.*, 180 P.3d 955, 958 (Alaska 2008).

-6-                                                                    **7586**

application for or award of disability compensation, combination of benefits with any other retired pay, waiver for any reason, including as a result of other federal service, or in any other way) . . . ." The order thus defines "takes any action" to include receiving an "award of disability compensation." Under this clear language, Kendre's receipt of an "award of disability compensation" triggers his duty to indemnify Vieanna to the extent her $1,200 monthly payment is reduced.

Second, Kendre's argument that he did not "take any action" to trigger the indemnity provision is not persuasive. He testified that his retirement pay had been converted to disability pay after he had been found unemployable following a doctor's appointment. Attending a doctor's appointment at which one's disability rating is assessed is taking action; the government does not change a veteran's disability rating without input about the veteran's health status. So putting aside the fact that the agreement's terms define "takes any action" to include receiving an award of disability pay, Kendre's visiting a doctor and having his disability assessed counts as taking action that led to the reduction of Vieanna's payments.

The purpose of the indemnification provision in Kendre and Vieanna's agreement is to protect Vieanna's right to receive the benefits that were bargained for. The total conversion of Kendre's retirement benefits to disability benefits is precisely the type of situation the provision was designed to protect against.

### B. The Superior Court Did Not Err By Ruling The Indemnity Clause Is Enforceable Under Federal Law.

Kendre argues that enforcing the indemnity provision violates federal law. He claims that after he was found 100% disabled, the superior court required him "to continue to pay the exact same amount, $1,200 per month, directly from his only source of income, i.e. his disability pay." Kendre argues that "[t]his dollar for dollar" replacement of retirement pay with disability pay is prohibited by federal law.

Although military retirement pay is considered marital property that may be divided between the spouses upon divorce, in *Mansell v. Mansell* the United States Supreme Court held that state courts may not divide veterans' disability benefits.[6] Because a military retiree "may receive [VA] disability benefits only to the extent that he waives a corresponding amount of his military retirement pay,"[7] a veteran's decision to waive retirement pay and receive disability benefits instead creates problems for the division of marital property. In *Clauson v. Clauson* we held that it would be "unacceptable" for a court to "simply shift an amount of property equivalent to the waived retirement pay from the military spouse's side of the ledger to the other spouse's side" to balance the military spouse's receipt of disability benefits.[8] "Disability benefits should not, in either form or substance, be treated as marital property subject to division upon the dissolution of marriage."[9] Yet courts need not "completely ignore the economic consequences of a military retiree's decision to waive retirement pay in order to collect

---

[6]    *Mansell v. Mansell*, 490 U.S. 581, 594-95 (1989) (holding that dividing military disability benefits violates the Uniformed Services Former Spouses' Protection Act (USFSPA)).

[7]    2 MARK E. SULLIVAN, THE MILITARY DIVORCE HANDBOOK: A PRACTICAL GUIDE TO REPRESENTING MILITARY PERSONNEL AND THEIR FAMILIES 670 (3d ed. 2019) (quoting *Mansell*, 490 U.S. at 583).

[8]    *Clauson v. Clauson*, 831 P.2d 1257, 1264 (Alaska 1992).

[9]    *Id.*

disability pay."[10] The superior court may consider the economic consequences of this decision in deciding upon an equitable division of the marital property that remains.[11]

Both the U.S. Supreme Court and our court have also addressed the problem of enforcing the parties' obligations to one another if the military retiree elects to waive retirement pay that has already been divided in divorce, thereby reducing benefits that the other spouse was entitled to receive under the property division order. In *Young v. Lowery* we held that "the trial court may expressly order [the service member] not to reduce his disposable retired pay and require [him] to indemnify [the former spouse] for any amounts by which her payments are reduced below the amount set" in the qualified order.[12] However, in *Howell v. Howell* the U.S. Supreme Court rejected this approach.[13] After a veteran had elected to receive disability pay in lieu of retirement, the Arizona Supreme Court upheld a trial court's decision to order the veteran to "reimburse" his former spouse for the amount her share of his retirement pay had been reduced.[14] The U.S. Supreme Court reversed, stating that courts may not avoid *Mansell*'s holding "by describing the family court order as an order requiring [the veteran spouse]

---

[10]     *Guerrero v. Guerrero*, 362 P.3d 432, 440 (Alaska 2015) (quoting *Clauson*, 831 P.2d at 1262).

[11]     *Id.*

[12]     221 P.3d 1006, 1012 (Alaska 2009), *abrogated by Howell v. Howell*, 137 S. Ct. 1400 (2017), *as recognized in Gross v. Wilson*, 424 P.3d 390, 400-01 (Alaska 2018).

[13]     137 S. Ct. at 1405-06.

[14]     *Id.* at 1405.

to 'reimburse' or to 'indemnify' [the other spouse], rather than an order that divides property" because "[t]he difference is semantic and nothing more."[15]

Although *Howell* makes clear that state courts cannot simply order a military spouse who elects disability pay to reimburse or indemnify the other on a dollar for dollar basis, *Howell* does not preclude one spouse from agreeing to indemnify the other as part of a negotiated property settlement. Nor does *Howell* preclude courts from enforcing such an agreement. In *Gross v. Wilson* we held that courts may enforce a negotiated settlement agreement in which a military spouse promised to pay another a share of the military spouse's disability benefits.[16] When the military spouse stopped making the payments, arguing that they were improper under federal law, the superior court ordered the payments to continue, and we affirmed.[17] We concluded:

> Under *Howell* a state court may not circumvent *Mansell* by ordering a service member to "indemnify" a former spouse for retirement benefits waived to receive disability pay. But *Howell* does not hold that a state court cannot enforce a property division by ordering a service member who unilaterally stops making payments the service member was legally obligated to make to resume those payments and pay arrearages.[18]

---

[15]     *Id.* at 1406.

[16]     424 P.3d at 401.

[17]     *Id.* at 394.

[18]     *Id.* at 401.

A treatise on military divorces concurs, observing that "[i]t's one thing to argue about a judge's power to require . . . a duty to indemnify," but "another matter entirely to require a litigant to perform what he has promised in a contract."[19]

Only the latter is at issue here. The superior court did not divide Kendre's disability pay. It merely required him to keep the terms of his promise: to indemnify Vieanna should he take any action that caused her to receive less than $1,200 per month from his military retirement pay. An indemnity provision like the one in Kendre and Vieanna's negotiated property settlement agreement is a bargained-for term that "take[s] account of the contingency that some military retirement pay might be waived," which is a proper consideration in arriving at an overall division of marital property.[20] Neither federal law nor our own precludes the superior court from enforcing this contract term.

## C. The Superior Court's Order Granting Vieanna Relief Did Not Violate The Law Of The Case Doctrine.

Kendre claims that the law of the case doctrine precluded the superior court from enforcing the indemnity provision in 2020 because it had already denied Vieanna's motion to enforce a year earlier. But the superior court did not abuse its discretion when it decided to grant Vieanna relief.

The law of the case doctrine "limits redetermination of rulings made earlier in the same lawsuit."[21] It applies both to issues that have been "adjudicated in a previous

---

[19] SULLIVAN, *supra* note 7, at 691 (explaining that *Howell* decision "magnifies the importance of using an indemnification provision in the property settlement" for parties negotiating division of marital property).

[20] *See Howell*, 137 S. Ct. at 1406 ("[A] family court, when it first determines the value of a family's assets, remains free to take account of the contingency that some military retirement pay might be waived . . . .").

[21] *Robert A. v. Tatiana D.*, 474 P.3d 651, 654-55 (Alaska 2020) (original
(continued...)

appeal in the same case" and to "issues that have been fully litigated in the superior court and as to which no timely appeal has been made."[22] The doctrine is " 'not an absolute rule of law' but rather 'a matter of sound judicial policy' "[23] providing that "issues previously adjudicated can only be reconsidered where there exist exceptional circumstances presenting a clear error constituting a manifest injustice."[24]

Kendre is correct that the superior court essentially granted Vieanna's motion to enforce over a year after denying this same relief. Its October 2020 order denied Vieanna's Rule 60(b) motion because "the issue is not one of 60(b) relief but rather of enforcement." The court interpreted the parties' agreement as requiring Kendre to indemnify Vieanna for her monthly payments and ordered that Kendre indemnify Vieanna "in the amount of $1200/mo. "— exactly the relief Vieanna sought in her initial motion to enforce in 2019.

To begin, it is not clear that the law of the case doctrine applies here. The superior court described its comments on the record both as "preliminary thoughts" and then as a "partial ruling" denying the motion to enforce, which was "without prejudice to [Vieanna's] re-filing . . . another motion." On one hand, we have held that "[a] judgment of dismissal without prejudice is considered a final judgment for purposes of

---

[21]    (...continued) emphasis removed) (quoting *Rekhi v. Wildwood Indus., Inc.*, 61 F.3d 1313, 1317 (7th Cir. 1995)).

[22]    *Id.* (quoting *Barber v. State, Dep't of Corr.*, 393 P.3d 412, 419 (Alaska 2017)).

[23]    *Id.* (quoting *Hallam v. Holland Am. Line, Inc.*, 180 P.3d 955, 958 (Alaska 2008)).

[24]    *State, Com. Fisheries Entry Comm'n v. Carlson*, 270 P.3d 755, 760 (Alaska 2012) (quoting *State, Com. Fisheries Entry Comm'n v. Carlson*, 65 P.3d 851, 859 (Alaska 2003)).

appeal."[25] On the other hand, a fair reading of the decision indicates the superior court's expectation that the parties would file something further for its consideration, so the decision might be better characterized as tentative. It therefore is questionable whether the issue of enforcing the settlement agreement was "fully litigated in the superior court"[26] and entitled to the presumption of finality that the law of the case doctrine embodies.

But even assuming the doctrine applies, it was not an abuse of discretion to revisit the issue of enforcement because doing so was necessary to correct "a clear error constituting a manifest injustice."[27] The superior court's initial ruling on Vieanna's motion to enforce in 2019 briefly acknowledged the indemnity provision in the parties' settlement agreement, but assumed without analysis that it did not apply. In 2020 the court recognized that the indemnity provision "contemplates the eventuality that has transpired (i.e., the elimination of [Kendre]'s non-disability retirement)" — in other words, the provision was designed for this situation exactly — and gave effect to it so that Vieanna would not be deprived of a valuable asset that was a core element of the parties' bargain. In fact, by enforcing the indemnity provision, the court obviated the need to consider setting aside the property settlement entirely due to negation of its

---

[25] *Farrell ex rel Farrell v. Dome Labs., a Div. of Miles Labs., Inc.*, 650 P.2d 380, 383 (Alaska 1982).

[26] *Robert A.*, 474 P.3d at 655.

[27] *Carlson*, 270 P.3d at 760 (quoting *Carlson*, 65 P.3d at 859).

underlying assumptions.[28]  It was appropriate not to apply the law of the case doctrine here.

**D.    It Was Not Unconscionable To Enforce The Indemnity Clause**.

Kendre argues that it would be unconscionable to enforce the terms of the settlement documents against him.  We disagree.

Kendre first argues that the settlement agreement was unconscionable when it was signed because of his disability.  He points to the fact that he "has suffered from a 90% disability rating since 2014," and argues that "the complexity of the language" in the settlement documents indicates that Vieanna "had an attorney assisting her in drafting the documents."  He asks only for paragraph 12 of the agreement to be set aside, claiming that he "arguably did not understand the implications of the provision that Vieanna drafted . . . which addressed disability payments."

We described our approach to unconscionability in *Askinuk Corp. v. Lower Yukon School District*:

> A contract or a contractual term is "not unconscionable merely because the parties to it are unequal in bargaining position, nor even because the inequality results in an allocation of risks to the weaker party."  But . . . unconscionability may exist if the circumstances indicate a "vast disparity of bargaining power coupled with terms unreasonably favorable to the stronger party."[29]

---

**28**      *Cf. Guerrero v. Guerrero*, 362 P.3d 432, 445 (Alaska 2015) (reasoning that setting aside property settlement agreement pursuant to Civil Rule 60(b)(6) may be warranted when military spouse's election of disability pay eliminates non-military spouse's share of retirement pay promised in property settlement agreement because "fundamental underlying assumption" of the agreement was destroyed).

**29**      214 P.3d 259, 268 (Alaska 2009) (first quoting *Vockner v. Erickson*, 712 P.2d 379, 382 (Alaska 1986); and then quoting *OK Lumber Co. v. Alaska R.R.*, 123 P.3d

(continued...)

Kendre fails to show either a vast disparity of bargaining power or terms unreasonably favorable to Vieanna.

The indemnification provision protecting Vieanna's interest in the $1,200 payments is not unreasonably favorable to her. It merely protects the division of assets that the parties agreed on from the risk that Kendre's circumstances might change and result in his receiving disability pay in lieu of retirement. Although Kendre emphasizes his modest financial circumstances, he does not claim that he is now receiving *less* money from disability benefits than he previously received from military retirement benefits.

Nor does the record support Kendre's argument that because the agreement is sophisticated, Vieanna must have prepared it with a lawyer while Kendre went unprotected. The parties reached their property settlement through mediation, and each party initialed a provision confirming that they had the opportunity to consult with an attorney. Vieanna also testified at the August 2018 hearing that the mediator had helped prepare the parties' final divorce settlement agreement for them.

Kendre's disability is not grounds for a finding of unconscionability. Kendre maintains on appeal that he "arguably did not understand the implications of the [indemnity] provision." But there is no evidence in the record to conclude that Kendre did not understand the parties' property division. At the August 2018 hearing on the settlement agreement, Kendre answered "yes" when the court asked him if he was "clear-headed today, able to think." Although the record indicates that Kendre was disabled in 2018 as a result of a severe head injury, and the superior court noted at the July 2019 hearing that Kendre may not have "full capacity," the effect of Kendre's disability on his

---

[29]  (...continued)
1076, 1081 n.17 (Alaska 2005)).

ability to comprehend the settlement was never litigated before the superior court. For that reason there is no factual record for us to conclude that his disability renders enforcement of the parties' settlement agreement unconscionable. To challenge the enforceability of the settlement agreement due to lack of capacity, Kendre would have had to seek relief from the court on that basis.[30]

Kendre next argues that the property settlement has become unconscionable due to changed circumstances because he is "now 100% disabled" and "cannot afford to pay Vieanna ongoing payments of $1,200 per month in addition to judgment for $16,800." But enforcing a contractual provision that was designed for precisely this change in circumstances — Kendre receiving 100% disability pay in lieu of retirement pay — is not unconscionable.[31]

### E.    Kendre Waived His Laches Argument By Failing To Raise It In The Superior Court.

Kendre argues that Vieanna's Rule 60(b) motion was barred by the equitable doctrine of laches. He claims that after the superior court told Vieanna that she

---

[30]    *See* Alaska R. Civ. P. 60(b)(6) (allowing court to set aside judgment "for any other reason"). It is worth noting that if Kendre proved that he lacked capacity to enter into the property settlement agreement, the entire agreement would be unenforceable — not just the agreement's indemnity provision.

[31]    Kendre asserts that the covenant of good faith and fair dealing bars enforcement of the indemnity provision. The covenant, which is included in every contract, concerns parties' duty not to act in a way "which will injure the right of the other to receive the benefits of the agreement," *Guin v. Ha*, 591 P.2d 1281, 1291 (Alaska 1979), and is intended to require the parties "to do everything that the contract presupposes will be done in order to accomplish the purpose of the contract," *Arizona v. Tohono O'odham Nation*, 818 F.3d 549, 562 (9th Cir. 2016) (quoting *Sessions, Inc. v. Morton*, 491 F.2d 854, 857 (9th Cir. 1974)). Kendre's arguments concern enforcement of the contract terms themselves, not anything Vieanna has done to deprive him of the benefit of the contract. The covenant does not apply to this case.

could move for the court to reassess the property division, "she filed a lawsuit in Tennessee asking for the same relief she asked for in Alaska" and ultimately "waited over a year to file her Civil Rule 60(b) motion in Alaska." After the court's ruling on Vieanna's motion to enforce, Kendre stopped paying Vieanna $1,200 a month in reliance on the ruling. He implies that were it not for Vieanna's delay, he would not now be faced with an order to pay arrears of $16,800.

But Kendre failed to argue laches to the superior court when opposing Vieanna's Rule 60(b) motion or when seeking reconsideration. "A party may not raise an issue for the first time on appeal."[32] Because Kendre did not raise his laches argument to the superior court, the superior court made no findings on this point, and there is no ruling for us to review. The laches argument is therefore waived.

## F. The Superior Court Did Not Rely On An Unpled Legal Theory.

Kendre argues that the superior court relied on the indemnity provision of the parties' settlement agreement without giving the parties an opportunity to present argument about it. He claims that when the court denied Vieanna's Rule 60(b) motion, it "inserted . . . a ruling on an [unpled] legal theory . . . without giving notice that the new theory would be used and without affording either party an opportunity to present any evidence and arguments relevant to it." Kendre argues that this lack of notice "caused [him] prejudice."

---

[32] *Brandon v. Corr. Corp. of Am.*, 28 P.3d 269, 280 (Alaska 2001); *see also B.B. v. D.D.*, 18 P.3d 1210, 1214 (Alaska 2001) ("Matters not made issues or tried before the [superior] court will not be considered on appeal."). Kendre also failed to include laches in his statement of points on appeal; we ordinarily decline to "consider issues that are not included in the appellant's statement of points on appeal." *Mullen v. Christiansen*, 642 P.2d 1345, 1350 (Alaska 1982).

We have held that superior courts should avoid deciding cases on an unpled theory and that, when they do so, they should provide appropriate notice to the parties.[33] But the superior court in this case did not rely on an unpled legal theory. In fact, Vieanna originally moved to enforce the settlement agreement, and it was only after the superior court suggested that the agreement was unenforceable that Vieanna moved for relief under Rule 60(b). And although Vieanna then filed a motion seeking relief under Rule 60(b), it was clear from the content of her motion that she was seeking to enforce the indemnity provision in the settlement agreement:

> The parties' settlement agreement stated that the $1,200 could not be modifiable by either party. . . . It clearly states that if Mr. Jones takes any action to decrease or waive his retirement pay, . . . he would still owe [Vieanna] the same amount. It specifically states that Mr. Jones will indemnify Ms. Jones against reduction of her monthly payment. This was an integral part of the parties' agreement.

Vieanna went on to "ask[] the court to enforce the parties' settlement agreement and order [Kendre] to resume paying the $1,200 that the parties agreed he would pay." Kendre was on notice that Vieanna sought to enforce this aspect of the agreement, so it was incumbent on him to raise any arguments against that provision when opposing Vieanna's motion. In fact, Kendre did raise a number of arguments — including the law of the case doctrine and arguments based on *Mansell* — and fails to explain how he was

---

[33]     *State v. First Nat'l Bank of Anchorage*, 660 P.2d 406, 423 (Alaska 1982) (holding court has authority to decide case on unpled legal theory only "when the new theory applies to the transaction in issue, is related to the theories presented by the parties, and is necessary for a proper and just disposition of the case" but court must "take steps to eliminate the prejudice by giving notice that the new theory will be used and affording an opportunity to the parties to present evidence and arguments relevant to it").

prejudiced by the court's ruling on the argument presented in Vieanna's motion. We see no abuse of discretion in the superior court's ruling.

## V.    CONCLUSION

We AFFIRM the superior court's order.