138 Nev., Advance Opinion 78

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| ERICH M. MARTIN,<br>Appellant,<br>vs.<br>RAINA L. MARTIN,<br>Respondent. | No. 81810 |
| ERICH M. MARTIN,<br>Appellant,<br>vs.<br>RAINA L. MARTIN,<br>Respondent. | No. 82517<br><br>**FILED**<br>DEC 01 2022<br>ELIZABETH A. BROWN<br>CLERK OF SUPREME COURT<br>BY _____<br>CHIEF DEPUTY CLERK |

Consolidated appeals from district court orders enforcing a divorce decree and awarding pendente lite attorney fees. Eighth Judicial District Court, Family Division, Clark County; Rebecca Burton, Judge.

*Affirmed.*

Marquis Aurbach Coffing and Chad F. Clement and Kathleen A. Wilde, Las Vegas,
for Appellant.

Willick Law Group and Marshal S. Willick and Richard L. Crane, Las Vegas,
for Respondent.

Kainen Law Group and Racheal H. Mastel, Las Vegas,
for Amicus Curiae American Academy of Matrimonial Lawyers.

22-37742

Pecos Law Group and Shann D. Winesett, Henderson,
for Amicus Curiae Family Law Section of the State Bar of Nevada.

---

BEFORE THE SUPREME COURT, EN BANC.[1]

*OPINION*

By the Court, STIGLICH, J.:

In this opinion, we consider whether an indemnification provision in a property settlement incident to a divorce decree is enforceable where a divorcing veteran agrees to reimburse his or her spouse should the veteran elect to receive military disability pay rather than retirement benefits. Electing disability pay requires a veteran to waive retirement benefits in a corresponding amount to prevent double-dipping. And so, where a state court divides military retirement pay between divorcing spouses as a community asset, this election diminishes the amount of retirement pay to be divided and thus each party's share. Federal law precludes state courts from dividing disability pay as community property in allocating each party's separate pay, and courts may not order the reimbursement of a nonveteran spouse to the extent of this diminution. We conclude, however, that state courts do not improperly divide disability pay when they enforce the terms of a negotiated property settlement as res judicata, even if the parties agreed on a reimbursement provision that the state court would lack authority to otherwise mandate. We also conclude

---

[1]The Honorable Abbi Silver having retired, this matter was decided by a six-justice court.

 

that a court does not abuse its discretion by awarding pendente lite attorney fees under NRS 125.040 without analyzing the *Brunzell*[2] factors because those factors consider the quality of work already performed, in contrast to an NRS 125.040 attorney fee award, which is prospective in nature. Therefore, in this case, we affirm the orders of the district court.

## FACTS AND PROCEDURAL HISTORY

Erich and Raina married in 2002 while Erich was serving in the military. They later separated, Erich filed a complaint for divorce, and the district court ordered mediation. Following mediation, the parties put the terms of their divorce agreements into a signed marital settlement agreement. According to the district court minutes, the next day, at the scheduled case management conference, Erich's counsel informed the district court that "the parties reached an agreement resolving all issues, and a Decree of Divorce is forthcoming."

The district court entered the divorce decree in November 2015. In relevant part, the decree allotted to Raina half of Erich's military retirement benefits and provided that Erich shall reimburse Raina for any reduction in that amount if he elects to receive disability pay instead of retirement pay. A year later, the court entered an order incident to the divorce decree to provide sufficient details to allow the Defense Finance and Accounting Service (DFAS) and the parties to correctly allocate Raina's percentage of the military retirement benefits in accordance with the divorce decree. The court specified that the order was intended to qualify under the Uniformed Services Former Spouses' Protection Act, 10 U.S.C.

---

[2]*Brunzell v. Golden Gate Nat'l Bank*, 85 Nev. 345, 455 P.2d 31 (1969).

§ 1408 (2018). The order further provided that Erich shall pay Raina directly to make up any deficit created if he applies for disability pay.

Erich retired from the military in 2019, and Raina began receiving her agreed-upon share of Erich's retirement benefits from DFAS. The following year, DFAS informed Raina that she would no longer be receiving benefit payments from DFAS because Erich opted for full disability pay, waiving all retirement pay. Raina contacted Erich to inquire how she would receive payments from him, and Erich responded that he would not be paying her, claiming he was not required to do so under federal law.

Raina subsequently moved to enforce the divorce decree. Erich opposed, arguing that reimbursement for selecting disability pay is unenforceable under federal statute and United States Supreme Court precedent. Following a hearing, the district court issued an order enforcing the divorce decree. The district court determined that federal law did not "divest the parties of their right to contract" to the terms in the divorce decree requiring Erich to reimburse or indemnify Raina for any waiver of military retirement benefits resulting in a reduction of her payments. The district court also concluded that the decree was binding on the parties as res judicata. The district court accordingly granted Raina's motion to enforce the reimbursement provision of the divorce decree and ordered Erich to pay Raina monthly installments in the amount she would have been entitled to if Erich had not waived his retirement pay.

After Erich filed a notice of appeal, Raina moved for pendente lite attorney fees and costs for the appeal. Erich opposed, asserting that Raina could afford her own attorney fees. The district court granted Raina's request, although in a reduced amount, awarding $5000 in attorney fees.

Erich appealed both the order regarding enforcement of military retirement benefits and the order awarding pendente lite attorney fees, and the two appeals were consolidated for review. The court of appeals affirmed in part the order awarding attorney fees, reversed in part the district court order enforcing the divorce decree, and remanded. *Martin v. Martin*, Nos. 81810-COA & 82517-COA, 2021 WL 5370076 (Nev. Ct. App. Nov. 17, 2021) (Order Affirming in Part, Reversing in Part, and Remanding). Raina petitioned this court for review under NRAP 40B. We granted the petition and invited the participation of amici curiae. The American Academy of Matrimonial Lawyers (AAML) filed an amicus brief in support of Raina. The Family Law Section of the State Bar of Nevada joined AAML's brief.

## DISCUSSION

Erich argues that the district court erred by enforcing the divorce decree and ordering indemnification because federal law, including 10 U.S.C. § 1408 (2018) and *Howell v. Howell*, 581 U.S. ___, 137 S. Ct. 1400 (2017), preempts state courts from dividing military disability benefits. He argues that the United States Congress has directly and specifically legislated in the area of domestic relations regarding the division of veterans' benefits, preempting state law. Erich further argues that the district court's reliance on contract principles and res judicata was misplaced and did not permit the court to enforce the divorce decree.

In response, Raina argues that the district court appropriately ordered indemnification pursuant to the divorce decree. She asserts that the district court correctly determined that res judicata applied because the parties negotiated and agreed to the terms of the divorce decree and that federal law did not preempt the court from enforcing the final, unappealed decree. She argues that *Howell* is distinguishable because contractual

indemnification was never raised in *Howell* and asserts that the United States Supreme Court left open the possibility that parties may consider that a spouse could later waive retirement pay when drafting divorce terms.[3]

Howell *and* Mansell[4] *are distinguishable*

We review questions of law, including interpretation of caselaw, de novo. *Liu v. Christopher Homes, LLC*, 130 Nev. 147, 151, 321 P.3d 875, 877 (2014) (reviewing a district court's application of caselaw de novo); *Wyeth v. Rowatt*, 126 Nev. 446, 460, 244 P.3d 765, 775 (2010) ("Appellate issues involving a purely legal question are reviewed de novo."). Statutory construction likewise presents a question of law that we review de novo. *Leven v. Frey*, 123 Nev. 399, 402, 168 P.3d 712, 714 (2007). "[W]hen a statute's language is plain and its meaning clear, [we generally] apply that plain language." *Id.* at 403, 168 P.3d at 715.

Congress passed the Uniformed Services Former Spouses' Protection Act (USFSPA) in 1982. *See* Pub. L. No. 97-252, §§ 1001-02, 96 Stat. 730-35 (1982) (codified at 10 U.S.C. § 1408 (2018)). Pursuant to 10 U.S.C. § 1408(c)(1), courts are authorized to treat veterans' "disposable retired pay" as community property upon divorce. "Disposable retired pay" is defined as "the total monthly retired pay to which a member is entitled,"

---

[3]In its amicus brief, AAML argues that *Howell* does not preclude enforcement of indemnification provisions when the parties agreed to the terms in a marital settlement. AAML asserts that federal law does not preempt state courts from enforcing an agreed upon judgment, such as the divorce decree at issue here, when the purpose of the enforcement order is consistent with the intent of the parties. AAML provides examples of other jurisdictions that enforce indemnity clauses in agreements where one party has reduced his or her retirement pay amount in favor of disability benefits.

[4]*Mansell v. Mansell*, 490 U.S. 581 (1989).

 

less certain deductions. 10 U.S.C. § 1408(a)(4)(A). Disability benefits received involve "a waiver of retired pay" and are deducted from a veteran's "disposable retired pay" amount.[5] *See* 10 U.S.C. § 1408(a)(4)(A)(ii); *see also* 38 U.S.C. § 5305 (2012) (providing that military disability payments require a waiver of retired pay). Thus, where parties agree to a particular division of military retirement pay, waiving that pay in whole or part in favor of receiving disability benefits will reduce the share of military retirement pay that each party will receive.

The Supreme Court has held "that the [USFSPA] does not grant state courts the power to treat as property divisible upon divorce military retirement pay that has been waived to receive veterans' disability benefits." *Mansell v. Mansell*, 490 U.S. 581, 594-95 (1989). While retirement pay may be a community asset subject to division by state courts, disability benefits are not. *Id.* at 588-89. The Court further clarified that a state court may not "subsequently increase, pro rata, the amount the divorced spouse receives each month from the veteran's retirement pay in order to indemnify the divorced spouse for the loss caused by the veteran's waiver." *Howell*, 581 U.S. at ___, 137 S. Ct. at 1402. When the *Howell* parties divorced, the divorce decree treated the veteran husband's future military retirement pay as community property and awarded the nonveteran wife 50 percent of the retirement pay as separate property. *Id.* at ___, 137 S. Ct. at 1404. After the husband waived some military retirement pay for disability benefits, the wife sought to enforce the decree

---

[5]The United States Supreme Court has observed that "since retirement pay is taxable while disability benefits are not, the veteran often elects to waive retirement pay in order to receive disability benefits." *Howell*, 581 U.S. at ___, 137 S. Ct. at 1403.

in state court, and the court ordered the husband to pay the 50-percent portion of the original retirement amount. *Id.* The Supreme Court reversed, concluding any reimbursement was a division of disability benefits by the state court, which federal law prohibits. *Id.* at ___, 137 S. Ct. at 1406. *Howell* and *Mansell* thus provide that federal law preempts state courts from treating disability benefits as community property that may be divided to reimburse a divorcing spouse for a lost or diminished share of retirement pay. *Howell*, 581 U.S. at ___, 137 S. Ct. at 1405; *Mansell*, 490 U.S. at 594-95.

Neither of those cases, however, involved the parties agreeing to an indemnification provision in the divorce decree property settlement. *See Howell*, 581 U.S. at ___, 137 S. Ct. at 1404 (involving a state court ordering husband to pay wife the original amount set out in the divorce decree after he waived some military retirement pay for disability benefits); *Mansell*, 490 U.S. at 586 (involving a state court declining to modify a divorce decree where the parties divided disability benefits as community property). The Alaska Supreme Court distinguished *Howell* on this basis, explaining that "[a]lthough *Howell* makes clear that state courts cannot simply order a military spouse who elects disability pay to reimburse or indemnify the other on a dollar for dollar basis, *Howell* does not preclude one spouse from agreeing to indemnify the other as part of a negotiated property settlement." *Jones v. Jones*, 505 P.3d 224, 230 (Alaska 2022); *see also id.* (quoting a treatise on military divorce for the observation that "[i]t's one thing to argue about a judge's power to require . . . a duty to indemnify, but another matter entirely to require a litigant to perform what he has promised in a contract" (alteration and omission in original) (internal quotation marks omitted)).

The instant matter is thus distinguishable. Here, Raina and Erich expressly agreed while negotiating marital settlement terms, as incorporated in the divorce decree, that "[s]hould Erich select to accept military disability payments, Erich shall reimburse Raina for any amount that her share of the pension is reduced due to the disability status." *Howell* and *Mansell* direct that state courts lack the authority to treat disability pay as community property and to divide it in a divorce disposition. They do not bar parties themselves from taking into account the possibility that one divorcing spouse may elect to receive disability compensation in the future and structuring the divorce decree accordingly.

*Federal law does not preempt enforcement*

In light of our conclusion that *Howell* and *Mansell* are distinguishable, we proceed to Erich's argument that Congress intended to preempt state law in this instance. The Supremacy Clause of the United States Constitution provides that federal law is the supreme law of the land. U.S. Const. art. VI, § 2; *Nanopierce Techs., Inc. v. Depository Tr. & Clearing Corp.*, 123 Nev. 362, 370, 168 P.3d 73, 79 (2007). The doctrine of federal preemption thus provides that federal law shall apply and preempt state law where Congress intended to preempt state law. *Id.* Preemption may be either express, by explicit statement in the federal statute, or implied, when Congress seeks to legislate over an entire subject or field or when state and federal statutes conflict. *Id.* at 371-75, 168 P.3d at 79-82. While state law typically controls in matters of family law including divorce, *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 581 (1979), there have been some "instances where Congress has directly and specifically legislated in the area of domestic relations," *Mansell*, 490 U.S. at 587. We review questions of federal preemption de novo. *Nanopierce Techs.*, 123 Nev. at 370, 168 P.3d at 79. At the outset, we note that neither express preemption nor field

Supreme Court
OF
Nevada

(O) 1947A

9

preemption apply, as 10 U.S.C. § 1408 contains no specific bar against state enforcement of divorce decrees and as family law matters are typically issues of state law.

We further conclude that conflict preemption also does not apply. The Supreme Court has recognized that Congress, in enacting 10 U.S.C. § 1408, intended to preempt state courts from dividing disability benefits as community property. *Howell*, 581 U.S. at ___, 137 S. Ct. at 1405; *see also* 10 U.S.C. § 1408(c)(1) (providing when a court may treat disposable retired pay as separate or community property in accordance with the laws of its jurisdiction). The Court has observed that section 1408(c)(1) "limit[s] specifically and plainly the extent to which state courts may treat military retirement pay as community property." *Mansell*, 490 U.S. at 590. As discussed, however, that is not what the district court did in this instance. By its plain language, nothing in 10 U.S.C. § 1408 addresses what contractual commitments a veteran may make to his or her spouse in a negotiated property settlement incident to divorce. Rather, the statute in this regard limits what divisions a state court may impose based on community property laws.

Neither *Howell* nor *Mansell* confronted the intersection of 10 U.S.C. § 1408 and such contractual issues, and the Court intimated that such contractual duties lay beyond the federal preemption in this regard, as *Mansell* observed that whether res judicata applies to a divorce decree in circumstances such as these is a matter for a state court to determine and over which the United States Supreme Court lacks jurisdiction. *See* 490 U.S. at 586 n.5. And indeed, the Supreme Court's treatment of *Mansell* after remand is instructive. Where *Mansell* reversed a state court order reopening a settlement and dividing military benefits as community

property, *id.* at 586 n.5, 594-95, the state court on remand reached the same distribution of assets on res judicata grounds, as the parties also had stipulated to the division of gross retirement pay, and the Supreme Court denied certiorari from this amended disposition, *In re Marriage of Mansell*, 265 Cal. Rptr. 227, 233-34 (Ct. App. 1989), *cert. denied*, 498 U.S. 806 (1990). Similarly, this court has observed that "[a]lthough states cannot divide disability payments as community property, states are not preempted from enforcing orders that are res judicata or from enforcing contracts or from reconsidering divorce decrees, even when disability pay is involved." *Shelton v. Shelton*, 119 Nev. 492, 496, 78 P.3d 507, 509 (2003) (footnotes omitted). This aligns with the majority practice in state courts following *Mansell*. *Foster v. Foster*, 949 N.W.2d 102, 124 (Mich. 2020) (Viviano, J., concurring) (recognizing that "[a] strong majority of state court cases likewise hold that military benefits of all sorts can be divided under the law of res judicata" (alteration in original) (internal quotation marks omitted)). Accordingly, we conclude that federal law does not prevent Nevada courts from enforcing Raina and Erich's settled divorce decree. *Cf. Jones*, 505 P.3d at 230 (concluding that *Howell* does not prevent courts from enforcing indemnification provisions in negotiated property settlements).

*Nevada law requires enforcement of the decree of divorce*

As federal law does not preempt enforcement of the divorce decree, we turn to analysis under Nevada law. Erich argues the reimbursement provision of the divorce decree is unenforceable on contract grounds and that the district court erred by enforcing the decree through the doctrine of res judicata. In this regard, he contends this court should

SUPREME COURT
OF
NEVADA

(O) 1947A

11

revisit *Shelton*, contending that the decision is incompatible with federal law concerning veterans' disability benefits.[6]

Divorce decrees that incorporate settlement agreements are interpreted under contract principles, *Shelton*, 119 Nev. at 497-98, 78 P.3d at 510, and are subject to our review de novo, *May v. Anderson*, 121 Nev. 668, 672, 119 P.3d 1254, 1257 (2005). *See also Grisham v. Grisham*, 128 Nev. 679, 685, 289 P.3d 230, 234 (2012) (providing that an agreement between parties to resolve property issues pending divorce litigation is governed by general contract principles). An enforceable contract requires "an offer and acceptance, meeting of the minds, and consideration." *May*, 121 Nev. at 672, 119 P.3d at 1257. "Parties are free to contract, and the courts will enforce their contracts if they are not unconscionable, illegal, or in violation of public policy." *Rivero v. Rivero*, 125 Nev. 410, 429, 216 P.3d 213, 226 (2009), *overruled on other grounds by Romano v. Romano*, 138 Nev., Adv. Op. 1, 501 P.3d 980 (2022).

Res judicata, or claim preclusion, applies when "[a] valid and final judgment on a claim precludes a second action on that claim or any part of it." *Univ. of Nev. v. Tarkanian*, 110 Nev. 581, 599, 879 P.2d 1180, 1191 (1994), *holding modified on other grounds by Exec. Mgmt., Ltd. v. Ticor Title Ins. Co.*, 114 Nev. 823, 963 P.2d 465 (1998). This court applies a three-

---

[6]Erich also argues the decree is unenforceable because he did not voluntarily sign the divorce decree. We decline to address this argument because we find no support in the record for Erich's claim that he opposed the division of retirement pay and benefits, and Erich does not identify any supporting evidence. *See* NRAP 28(e)(1) (requiring citations to the record to support every assertion); *cf. Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006) (stating this court need not consider claims that a party does not cogently argue or support with relevant authority).

part test to determine whether res judicata applies: "(1) the parties or their privies are the same, (2) the final judgment is valid, and (3) the subsequent action is based on the same claims or any part of them that were or could have been brought in the first case." *Five Star Capital Corp. v. Ruby*, 124 Nev. 1048, 1054, 194 P.3d 709, 713 (2008) (footnote omitted), *holding modified on other grounds by Weddell v. Sharp*, 131 Nev. 233, 350 P.3d 80 (2015). Generally, after parties settle or stipulate to a resolution, "a judgment entered by the court on consent of the parties" "is as valid and binding a judgment between the parties as if the matter had been fully tried, and bars a later action on the same claim or cause of action as the initial suit." *Willerton v. Bassham*, 111 Nev. 10, 16, 889 P.2d 823, 826 (1995). As *Mansell* acknowledges, res judicata as applied to divorce agreements is a state law issue. 490 U.S. at 586 n.5. The application of res judicata, or claim preclusion, is a question of law we review de novo. *Kuptz-Blinkinsop v. Blinkinsop*, 136 Nev. 360, 364, 466 P.3d 1271, 1275 (2020).

This court has held that state courts may enforce divorce decrees as res judicata even if those decrees involve distributions of military disability pay. *Shelton*, 119 Nev. at 496-97, 78 P.3d at 509-10. In *Shelton*, this court considered a divorce decree designating a veteran husband's military retirement pay and disability benefits as community property. *Id.* at 494, 78 P.3d at 508. The parties agreed that the husband would receive $500 as half of his retired pay and $174 in disability pay and that the wife would receive $577 as the other half of the retirement pay. *Id.* After the husband was deemed fully disabled, he waived his military retirement benefits and stopped paying the wife. *Id.* The wife moved to enforce the divorce decree and sought the agreed-upon $577. *Id.* This court concluded that the parties clearly contracted for the husband to pay the wife $577 each

month and enforced that obligation as res judicata. *Id.* at 497-98, 78 P.3d at 510-11 (explaining that the parties agreeing to a payment of $577 a month was more specific than simply "one-half" and that this amount was more than the amount the husband would receive from just the military retirement-specific pay). The court determined that *Mansell* and its progeny did not preclude enforcing the husband's obligations pursuant to the divorce decree. *Id.* at 495-96, 78 P.3d at 509. It observed that the husband may satisfy his contractual obligations with whatever monies he wished, even if that involved using disability pay. *Id.* at 498, 78 P.3d at 510-11.

Here, Erich and Raina engaged in negotiations, which were reduced to a signed settlement agreement and incorporated into the divorce decree. This created a valid, unambiguous contract between the parties. The divorce decree provided that Erich would reimburse Raina in the event that her share of the retirement benefits was reduced by Erich's decision to accept military disability payments. This indemnification provision may be enforced through contract principles, consistent with *Shelton*'s embrace of contract law to govern a military disability indemnification provision in a divorce decree. The provision at issue is unambiguous and requires Erich to reimburse Raina for her share of any amount he elects to waive from his retirement pay.

We conclude that res judicata applies, and the obligations set forth in the decree cannot now be relitigated because Raina and Erich are the same parties in the matter, the divorce decree is a valid final judgment, and the action here enforces the original decree without modifying it or introducing matters that could not have been addressed initially. *Cf. Mansell*, 265 Cal. Rptr. at 229, 236-37 (precluding challenge to distribution

SUPREME COURT
OF
NEVADA

(O) 1947A

14

of disability pay where husband stipulated to its inclusion in property settlement and declining to reopen and modify settlement); *In re Marriage of Weiser*, 475 P.3d 237, 246, 249, 252 (Wash. Ct. App. 2020) (affirming enforcement of divorce decree under res judicata where lower court enforced the original terms and did not modify its property disposition and rejecting argument that *Howell* barred distribution of military disability pay). Accordingly, we find no reason to depart from our decision in *Shelton*. And we therefore conclude the district court properly enforced the divorce decree under contract principles and res judicata.

*The district court did not abuse its discretion in awarding pendente lite attorney fees*

Erich argues that the district court abused its discretion by awarding Raina $5000 for pendente lite attorney fees. He contends the district court erred by not engaging in a *Brunzell*[7] analysis and that the court did not follow NRS 125.040. Raina argues that the district court properly awarded the attorney fees for the appeal pursuant to NRS 125.040 and *Griffith v. Gonzales-Alpizar*, 132 Nev. 392, 395, 373 P.3d 86, 89 (2016), because it was within the district court's discretion to award her these fees after the court found a significant income disparity between the two parties.

"In any suit for divorce the court may . . . require either party to pay moneys necessary . . . [t]o enable the other party to carry on or defend such suit." NRS 125.040(1)(c). The court must consider the financial situation of each party before making such an order. NRS 125.040(2). Even

---

[7]*Brunzell v. Golden Gate Nat'l Bank*, 85 Nev. 345, 349, 455 P.2d 31, 33 (1969) (providing four factors for courts to consider when determining the reasonable value of attorney fees: "the qualities of the advocate[,] . . . the character of the work[,] . . . the work actually performed[,] . . . [and] the result" (emphases omitted)).

so, "a party need not show necessitous circumstances in order to receive an award of attorney fees under NRS 125.040." *Griffith*, 132 Nev. at 395, 373 P.3d at 89 (internal quotation marks omitted). Attorney fees awarded under NRS 125.040(1)(c) are "pendente lite" because they cover fees in an ongoing divorce suit. *See Pendente Lite, Black's Law Dictionary* (11th ed. 2019) ("During the proceeding or litigation; in a manner contingent on the outcome of litigation."). We review an award of pendente lite attorney fees for an abuse of discretion. *See Griffith*, 132 Nev. at 395, 373 P.3d at 89. "[A]n award of attorney fees in divorce proceedings will not be overturned on appeal unless there is an abuse of discretion by the district court." *Miller v. Wilfong*, 121 Nev. 619, 622, 119 P.3d 727, 729 (2005).

After Erich filed the initial appeal, Raina moved for pendente lite attorney fees and costs, requesting the district court award her $20,000 to defend against the appeal. The court considered the financial circumstances of both parties and found that "Erich's income currently is about three times as high as Raina's income." The court highlighted that Raina's income had been reduced by COVID issues while Erich was still making his full-time income and that Raina would therefore be more financially impacted by the proceedings. At the same time, the court recognized that Raina's household expenses were reduced by her domestic partner but also noted that her domestic partner was not obligated to assist Raina in paying for these legal proceedings. After considering these circumstances, the court declined to award Raina all attorney fees sought and instead ordered Erich to contribute $5000 to Raina's pendente lite attorney fees.

We ascertain no abuse of discretion in this decision. The district court properly considered the financial circumstances of each of the parties before ordering attorney fees pursuant to NRS 125.040, and the record supports its findings as to the income disparity between the parties. Further, we conclude that the district court was not required to apply the *Brunzell* factors because *Brunzell* requires analysis of attorneys' services provided in the past. *See* 85 Nev. 345, 349, 455 P.2d 31, 33 (1969). In contrast, here the district court was considering prospective appellate work to award attorney fees. *See Griffith*, 132 Nev. at 395, 373 P.3d at 88 (distinguishing a decision addressing attorney fees for a previous matter rather than a prospective appeal as was properly within the scope of NRS 125.040); *Levinson v. Levinson*, 74 Nev. 160, 161, 325 P.2d 771, 771 (1958) (observing that attorney fees awarded pursuant to NRS 125.040 contemplate prospective expenses and should not reflect the attorneys' work already performed or expenses already incurred). Therefore, we affirm the district court order awarding pendente lite attorney fees to Raina.

## *CONCLUSION*

Under federal law, state courts may not treat disability pay as community property that may be divided in allocating the parties' separate property. This prohibition does not prevent state courts, however, from enforcing an indemnification provision in a negotiated property settlement as res judicata. As res judicata applies to the divorce decree at issue here, we conclude the district court properly ordered its enforcement. We further conclude that the award of pendente lite attorney fees does not require showing that the *Brunzell* factors are satisfied and that the district court

Supreme Court
OF
Nevada

(O) 1947A

17

did not abuse its discretion in awarding pendente lite attorney fees. We affirm.

_____, J.
Stiglich

We concur:

_____, C.J.
Parraguirre

_____, J.
Hardesty

_____, J.
Herndon

CADISH, J., with whom PICKERING, J., agrees, concurring:

I agree with the majority that, under our state law principles of res judicata, or claim preclusion, Erich's challenge to the parties' divorce decree is barred, and I would affirm the district court decision on that basis. However, I write separately because I disagree that the *Howell* and *Mansell* cases are otherwise distinguishable or that the fact the parties here entered into a settlement agreement that was later incorporated into the divorce decree prevents the indemnification provision at issue from being preempted under the Uniformed Services Former Spouses' Protection Act, 10 U.S.C. § 1408 (2018) (USFSPA).

In this case, during their underlying divorce proceedings, the parties reached a marital settlement agreement at a mediation that included provisions by which Erich and Raina would each receive their portion of Erich's military retirement when he retired, based on a calculation of the community property interest therein. It further stated, "Should [Erich] elect to accept military disability payments, [Erich] shall reimburse [Raina] for any amount her amount of his pension is reduced due to the disability status from what it otherwise would be." The divorce decree subsequently entered by the district court provided in pertinent part, "Raina shall be awarded the following[:] . . . One-half (1/2) of the marital interest in the [sic] Erich's military retirement . . . . Should Erich select to accept military disability payments, Erich shall reimburse Raina for any amount that her share of the pension is reduced due to the disability status." The section of the decree awarding property to Erich has a similar provision, including verbatim the last sentence requiring reimbursement by Erich for any reduction in Raina's share of the pension due to his acceptance of disability benefits. These provisions in the decree are contrary to federal

law and preempted, under the USFSPA and decisions of the United States Supreme Court interpreting it.

In *Mansell v. Mansell*, 490 U.S. 581, 594-95 (1989), the Supreme Court held "that the Former Spouses' Protection Act does not grant state courts the power to treat as property divisible upon divorce military retirement pay that has been waived to receive veterans' disability benefits." Then in *Howell v. Howell*, 581 U.S. \_\_\_, \_\_\_, 137 S. Ct. 1400, 1406 (2017), the Supreme Court reiterated this holding, emphasizing that describing the order as just requiring the military spouse to "reimburse" or "indemnify" the nonmilitary spouse for a reduction in retirement pay as a result of such waiver does not change the outcome, as "[t]he difference is semantic and nothing more." The Court specifically noted that the indemnification there was a "dollar for dollar" payment of the "waived retirement pay." *Id.* In concluding this portion of its analysis, the Court stated, "Regardless of their form, such reimbursement and indemnification orders displace the federal rule and stand as an obstacle to the accomplishment and execution of the purposes and objectives of Congress. *All such orders are thus pre-empted.*" *Id.* (emphasis added).

The majority attempts to distinguish *Mansell* and *Howell* because those cases did not "involve[ ] the parties agreeing to an indemnification provision in the divorce decree property settlement." Maj. Op., *ante* at 8. The majority also says that these cases do not deal with the interplay between the USFSPA and "such contractual issues." *Id.* at 10. However, this ignores that the *Mansell* case did involve a divorce where the parties "entered into a property settlement which provided, in part, that Major Mansell would pay Mrs. Mansell 50 percent of his total military retirement pay, including that portion of retirement pay waived so that

Major Mansell could receive disability benefits." 490 U.S. at 585-86. Several years later, Major Mansell asked to modify the divorce decree incorporating this provision to remove the requirement to share the disability portion of his retirement pay. *Id.* at 586. Although the decree provision at issue had been agreed to by the parties as part of their property settlement, the Court nevertheless held it was preempted by the USFSPA. *Id.* at 587-95.

Further, as discussed above, the Court made clear in *Howell* that calling it "indemnification" rather than a division of community property did not avoid the preemptive effect of the USFSPA. 581 U.S. at ___, 137 S. Ct. at 1406. The fact that the disability election came after the divorce decree was finalized, as in the instant case, also did not change that outcome. *Id.* at ___, 137 S. Ct. at 1404-06. The *Howell* Court thus acknowledged that, at the time of divorce, the parties may consider that the value of future military retirement pay may be less than expected should an election for disability pay be made, but simultaneously held that state courts may not account for this contingency by ordering reimbursement or indemnification if that occurs. *Id.* at ___, 137 S. Ct. at 1405-06. The Court held the following:

> [A] family court, when it first determines the value of a family's assets, remains free to take account of the contingency that some military retirement pay might be waived, or . . . take account of reductions in value when it calculates or recalculates the need for spousal support.
>
> We need not and do not decide these matters, for here the state courts made clear that the original divorce decree divided the whole of John's military retirement pay, and their decisions rested entirely upon the need to restore Sandra's lost

SUPREME COURT
OF
NEVADA

(O) 1947A

> portion. Consequently, the determination of the Supreme Court of Arizona must be reversed.

*Id.* at ___, 137 S. Ct. at 1406 (citations omitted).

Similarly, here, the provision of the divorce decree at issue discusses the division of the parties' assets and is in an entirely separate section than that covering spousal support, or alimony, as they are separate concepts under Nevada law. *See* NRS 125.150(1)(a) (providing for a permissible award of alimony); NRS 125.150(1)(b) (providing for an equal division of community property between parties to a divorce). The indemnification provision is not based on the factors appropriate for consideration in awarding spousal support, *see* NRS 125.150(9) (listing 11 nonexhaustive factors that must be considered in determining whether, and in what amount, to award alimony), but instead is designed to restore Raina's "lost portion" of Erich's military retirement pay, a community property asset. This is exactly what the Court has said is prohibited, and thus a family court may not enter this type of divorce decree provision because it is preempted by federal law.

The majority asserts that "[b]y its plain language, nothing in [the USFSPA] addresses what contractual commitments a veteran may make to his or her spouse in a negotiated property settlement incident to divorce." Maj. Op., *ante* at 10. But Raina here does not seek to enforce a private contract or assert a claim for breach of a contract; rather, as the majority notes, she "moved to enforce the divorce decree." *Id.* at 4. In response to her motion, "the district court issued an order enforcing the divorce decree." *Id.* Indeed, the majority's analysis of the applicability of res judicata principles acknowledges that this case involves enforcement of a "final judgment [that] is valid." *Id.* at 13 (quoting *Five Star Capital Corp. v. Ruby*, 124 Nev. 1048, 1054, 194 P.3d 709, 713 (2008)). Thus, the question

is not whether a private contract can be enforced, but whether a court-entered judgment can be enforced. And the Supreme Court has made clear that such judgments are contrary to federal law and thus preempted, even when containing provisions agreed to by the parties. A state court cannot enter an order that is contrary to federal law—and would thus be preempted—simply because it is entered based on the parties' settlement agreement. *Mansell*, 490 U.S. at 587-95 (holding preempted enforcement of a divorce decree provision based on the parties' settlement requiring payment of half of the military spouse's retirement pay and any portion of the retirement pay waived to receive disability benefits). To the extent we held to the contrary in *Shelton v. Shelton*, 119 Nev. 492, 78 P.3d 507 (2003), it must be overruled in light of *Mansell* and *Howell*.[1] *See State v. Lloyd*, 129 Nev. 739, 750, 312 P.3d 467, 474 (2013) (discussing that a decision may be overturned if it has proven "badly reasoned" or "unworkable" (internal quotation marks omitted)); *Armenta-Carpio v. State*, 129 Nev. 531, 535-36, 306 P.3d 395, 398-99 (2013) (recognizing that precedent may be overturned based on clearly erroneous reasoning).

The majority incorrectly conflates the application of preemption principles to enforcement of the provision in the divorce decree and their application to res judicata or claim preclusion. While the *Mansell* Court recognized that the application of res judicata principles to the parties' divorce settlement was a matter of state law, 490 U.S. at 586 n.5, the ability to treat disability benefits as divisible even when based on a settlement

---

[1]While *Shelton* also alluded to res judicata principles to support its decision, 119 Nev. at 496, 78 P.3d at 509 (holding that "states are not preempted from enforcing orders that are res judicata"), it provided no analysis of its application to that case. However, I agree that such principles would appear to be applicable in that case.

agreement was entirely a matter of federal law since it was preempted by the USFSPA, *id.* at 594-95. As the Supreme Court of Michigan held in *Foster v. Foster*, while "the offset provision in the parties' consent judgment of divorce impermissibly divides defendant's military disability pay in violation of federal law," "the doctrine of res judicata applies even if the prior judgment rested on an invalid legal principle," and "a divorce decree which has become final may not have its property settlement provisions modified except for fraud or for other such causes as any other final decree may be modified." No. 161892, 2022 WL 1020390, at *6-7 (Mich. Apr. 5, 2022) (quoting, in the last clause, *Pierson v. Pierson*, 88 N.W.2d 500, 504 (1958)). Similarly, under Nevada law, "[a] decree of divorce cannot be modified or set aside except as provided by rule or statute." *Kramer v. Kramer*, 96 Nev. 759, 761, 616 P.2d 395, 397 (1980). Thus, while the indemnification provision in the divorce decree is an impermissible division of military disability pay in violation of federal law, I agree with the majority that Erich may not now collaterally attack the decree, which has become final. I thus concur in the majority's decision to affirm.

_____, J.
Cadish


I concur:

_____, J.
Pickering